Hyde, receiver, &c. *vs.* Goodnow.

A mutual fire insurance company had an agent residing in the state of Ohio authorized to receive applications for insurance. The agent received from a party also residing in Ohio, an application together with the premium note of the applicant, and transmitted them to the office of the company in this state, where they were received, passed upon and approved, and where a policy was executed and transmitted to the applicant by mail. The agent had no authority to make insurances. In an action to recover the premium note, *held*, that the contract was made in the state of New-York at the office of the company, and not in the state of Ohio; and therefore that the contract was not within the prohibition of the statute of that state declaring that "no policy of insurance

shall be signed, issued or delivered" in that state by any company not chartered by the laws thereof, except by any agent of such company who should first have obtained a license in the manner prescribed by the act.

In general the rights of the parties to a contract, as distinguished from their remedies, are to be determined by the law of the place where the contract is to be performed.

An exception to this rule, however, exists where the contract is declared void by the law of the state or country in which it is made, but would be valid in the place where it is to be performed. In such a case the contract cannot be enforced in either place. *Per* HARRIS, J.

APPEAL from the supreme court, where Hyde, as receiver of the Chenango County Mutual Insurance Company, brought an action against Goodnow, to recover the amount of two premium or deposit notes. The cause was heard before a referee, and on the hearing the notes in question were given in evidence as follows:

" $100,00. For value received in Policy No. 4319, dated the eighth day of May, 1849, issued by the Chenango County Mutual Insurance Company, we promise to pay the said company, or their treasurer for the time being, the sum of one hundred dollars, in such portions, and at such time or times, as the directors of said company may, agreeably to their act of incorporation, require. MILTON W. GOODNOW.

THEODORE WILLIAMS."

" $100. For value received in Policy No. 4334, dated the sixteenth day of July, 1844, issued by the Chenango County Mutual Insurance Company, we promise to pay the said company, or their treasurer for the time being, the sum of one hundred dollars, in such portions, and at such time or times, as the directors of said company may, agreeably to their act of incorporation, require. MILTON W. GOODNOW."

The defendant, at the time the notes were given and the insurances therein referred to were effected, was a resident of Huron county in the state of Ohio, and the premises insured were situated in the same state and county. One Samuel L. Hatch, also residing in Ohio, was an agent and surveyor of the company duly appointed under its by-laws, and through him the applications for the insurances in question were made. The

notes in suit were delivered by the defendant to Hatch, and by him, together with the applications, were forwarded by mail to the office of the company at Norwich in the state of New-York. The policies in question were issued on those applications, from the office of the company, and were mailed to the defendant personally. The conditions of insurance annexed to the policies, and referred to therein as forming part of the contract, declared that no insurance should be considered as binding until the application and premium note were deposited in the office of the company, and the application approved by the directors. The 13th by-law of the company provided that every person wishing to become a member of the company should, previous to being insured, deposit his application and premium note with the secretary, and, if approved by a director, the policy should bear date on that day, and take effect at noon, unless directed by the applicant to be dated on a future day. The same by-law as well as the conditions of insurance provided that five per cent of the premium note should be paid at the time of making the application, and one dollar to the surveyor for his services, and fifty cents to the secretary for each policy, by the person receiving it.

It was insisted on the part of the defendant that the notes were illegal and void under an act of the legislature of the state of Ohio, passed March 12, 1831. The 3d section of that act is as follows :

" § 3. No policy of insurance of any description, or for any purpose, shall be signed, issued or delivered in this state, nor on any property of any kind situated in this state, by any association, company or corporation, not chartered by the law of this state, except by an agent of such company, who shall first have obtained license therefor from the county treasurer, as hereinafter provided ; and every policy, covenant or agreement of insurance issued or delivered or effected contrary to the provisions of this section, shall be to all intents and purposes null and void; and the person who shall sign, issue or deliver the same, in behalf of any such company, corporation or association, shall forfeit and pay for every such offense the sum of one hundred

dollars, to be recovered by action of debt, at the suit of the treasurer, and to be accounted for by him as for moneys received for taxes levied on such company, by the provisions of the succeeding section."

Sections 4, 5 and 6 provide for the licensing of agents, the giving of bonds, and the making of returns, &c. It was admitted that the agent Hatch had not complied with any of the provisions of the law. The referee reported in favor of the plaintiff for the amount of the notes, and the supreme court affirmed his decision. The defendant appealed to this court.

*H. M. Hyde,* for appellant.

*H. R. Mygatt,* for respondent.

HARRIS, J. It is a general rule of international law, that the *rights* of the parties to a contract, as distinguished from their *remedies,* are to be determined by the law of the place where the contract is to be performed. If a contract be made in one state or country, and it appears upon its face that it is to be performed in another, it will be presumed that the contract was entered into with reference to the laws of the latter, and those laws will be resorted to in ascertaining the validity, obligation and effect of the contract. This general rule, however, has its exceptions; one of which is, that where a contract is declared void by the law of the state or country where it is made, it can not be enforced as a valid contract in any other, though by its terms it was to have been performed there. Thus, assuming that the contracts in question had been made in Ohio, and that by the laws of that state such contracts are declared void, the courts of this state would be bound also to declare them void, though by their terms they were to have been performed here, and though if made here they would have been valid contracts. This exception is required by that just comity and public convenience upon which all international law is founded. A contract which is illegal and void, either by the law of the place where it is made, or that of the place where it is to be perform-

ed, is illegal and void every where. (*See Andrews* v. *Herriott,* 4 *Cowen,* 510, *note a, and cases there cited.*)

The statute of Ohio, upon which the defense rests, declares, in substance, that every insurance effected in that state by a foreign company, except as therein provided, shall be, to all intents and purposes, null and void. It is not claimed that the insurance, for which the notes in question were given, was effected in the manner prescribed in the statute. It follows, upon the principles already stated, that if it was effected in Ohio, the whole transaction was void. It is necessary, therefore, in the first place, to determine where the contracts upon which this action is brought were made.

Hatch was the agent of the company. He was authorized " to make surveys and receive applications for insurance." This was the extent of his authority, and beyond this he did not assume to act. He received the defendant's applications for insurance, with the premium notes executed by the defendant, and transmitted them to the company, at its place of business in the state of New-York. When did the transactions become obligatory upon the parties as contracts? In other words, when were the notes delivered to the company, so as to invest it with the legal right of enforcing payment according to their terms; and when did the company become bound to the defendant, as an insurer? The answer to these questions involves the solution of the inquiry where the contracts were made.

The applications of the defendant for insurance could in no sense have been regarded as a contract until they had been accepted by the company. The agent did not assume to do any thing which would bind the company. His office was to receive, and submit to the company, the defendant's propositions. Until the company acted upon such propositions, it was within the defendant's power at any time to recall them. Before the company had agreed to insure, the defendant, notwithstanding the execution and delivery of the notes and applications to the agent of the company, might have withdrawn his applications and upon his doing so, his notes would have been inoperative. Until then, the transactions were wanting in that mutuality

Hyde *v.* Goodnow.

which is essential to a valid contract. But when the company having received the applications, accompanied with the notes, consented to insure, and issued its policies, what was before revocable became irrevocable. What was before a mere proposition, then became invested with the attributes of a contract, and from that time each party became bound for its performance. If this be so, the contracts are to be regarded as having been made when the company received and accepted the defendant's applications and issued and transmitted to him their policies. Of course, they were contracts made in the state of New-York, and not in Ohio. The insurance was not effected in Ohio, nor were the policies "signed, issued, or delivered" there. The case therefore is not within the prohibitions of the statute. This being so, it is immaterial where the notes were payable. If the notes had been payable at the defendant's store in Ohio, this would have constituted no ground of defence. Suppose the defendant had himself applied to the company, at Norwich, for insurance, and had made his premium notes payable at his own store in Ohio, would it be pretended that there was any thing unlawful in such a transaction? The statute does not prohibit notes, though given for insurance to a foreign company, from being made payable in Ohio. It only prohibits foreign companies from effecting insurance or issuing or delivering policies in that state. If this has not been done in this case, (and we have seen that it has not,) there is nothing to impair the validity of the defendant's notes.

I think the learned referee, before whom this case was tried, decided correctly, and that the judgment of the supreme court should be affirmed.

Judgment affirmed.