## CHATHAM BANK V. ALLISON.

1. INDORSEMENT: GENERAL RULE. The general rule is, that the law of the place of the indorsement of a draft governs the liability of the indorser.

2. SAME: PLACE OF INDORSEMENT. When drafts were drawn in Dubuque, in this State, on New York, and were indorsed by the payees in the first named place, by whom they were sent to a bank in New York, for collection or credit, and were, after acceptance by the drawers, discounted by the bank in due course of business: *Held,* That the contract of indorsement was made in New York, and that the laws of that State would govern as to the time and manner of protest.

3. CERTIFICATE OF NOTARY. The certificate of a notary public, showing the manner in which notice of protest was served upon parties, is not inadmissible in evidence, for the reason that it was not made at the time of the presentation and protest.

*Appeal from Dubuque District Court.*

### FRIDAY, DECEMBER 11.

PLAINTIFF claims to recover a balance due on three drafts. Defendant denies due presentment and notice. These drafts were drawn in the city of Dubuque, in this State, and the indorsement of the name of the payees was written on them at the same place. They were payable in New York, to which place they were sent to plaintiff for collection or credit. The cashier of the bank took them to the drawers, who accepted the same, and the next day the bank discounted them in the regular course of business. One of these drafts fell due on Sunday, and was protested on Saturday. The other facts will sufficiently appear from the opinion. Judgment for plaintiff, and defendants appeal.

*Thomas M. Munroe* for the appellant.

I. The draft was not duly presented for payment at maturity. It fell due on Sunday, and the notarial protest shows that it was presented for payment and protested for non-payment on the next day preceding. By the statute of Iowa it was not due until the succeeding day. The law

is well settled that the construction of the contract of the indorsement, as to the time and manner of the presentment, must be according to the law of the place where the contract was made. 2 Pars. Cont., 83; *Pitkin* v. *Thompson*, 13 Pick., 68; Edwards on Bills, 263; 12 Wend., 439; Chit. Cont., 91; *Thorp, Smith & Hanchett* v. *Craig et al.*, 10 Iowa, 461.

II. The notarial certificate in neither case contains any statement of the giving of the notice, and is consequently no evidence of that fact. *Sather and Church* v. *Rogers*, 10 Iowa, 231; *Wilcox* v. *Heart et al.*, 13 Pet., 379; *Huber* v. *Steiner*, 2 Bing., 202; *Bown* v. *Thornton*, 6 Adolph. & E., 185.

*John L. Harvey* for the appellee. The place of the indorsement is where the actual transfer of the property takes place. *Cook* v. *Litchfield*, 5 Sand., 335; *Young* v. *Harris*, 14 B. Monr., 556; Pars. Merc. L., marg. 321, note 1; 1 Pars. Cont., marg. 230.

WRIGHT, J. — It is admitted that, as a general rule, the law of the place of the contract of indorsement is to govern the liability of the indorser. Appellants claim that by the statutes of this State the bill was not due until the succeeding day, or Monday, and that a presentment for payment, according to the law of New York, on the preceding day, or Saturday, was not sufficient to bind the indorser. And whether the contract of indorsement was made in this State or New York is, therefore, the question thus presented for our determination.

In the case of *Thorp et al.* v. *Craig*, 10 Iowa, 461, it is stated that the contract of indorsement was made in this State. As this is the very question to be determined in this present instance, that case is entitled to but little, if any, weight in its consideration. Where, then, was this contract made? It seems to us most clearly in New York.

The actual transfer was made there, and not when and where the indorsers placed their names on the back of the bills. As shown by the statement of the case and the testimony, these bills were sent by letter to the bank for collection or credit, but requesting the bank to discount them, if possible. All this was without any previous knowledge, on the part of plaintiff, and it was at its option to hold them for collection or to discount them. After they had been accepted they were discounted, and the bank accepted them thus transferred. A general and well-settled proposition is, that a contract is made when both parties assent to it, and not before. And when it is said in the books (Edw. on Bills, 246) that when a bill is drawn in one State, indorsed in another, and accepted and dishonored in a third, the rights of the holder can only be secured by a compliance with the law of three different States, reference is had to a case where the contract of indorsement is made in a different State, and not to one where the blank indorsement is made in one and the contract completed in the State where the acceptance and dishonor take place.

But if in this we should be in error, we believe the rule recognized and stated by Mr. Parsons, in his late work on Notes and Bills (1 vol., 640), to be entirely applicable, and to clearly sustain the ruling of the Court below. "If," says the author, "paper be made, or drawn, or accepted, or indorsed in one country, payable in another, the question whether demand and protest must be made, and notice given, according to the law of the place where the paper is payable, or according to that where the signatures are made, has been much discussed, and may not now be certain. We think the true rule is this: It being determined at what time the paper is mature and payable, then the protest should be made by the law of the place *where* the paper is payable, and, therefore, *where* the protest is to be

made. And the manner of making the demand and protest must be governed by the same law." See note z.

Another question made, applicable to all the bills, arises upon the following facts: They were presented for payment and protested on the 3d and 18th of May, and 1st day of June, 1861, respectively. These facts are evidenced by the notary's certificate, in due form. On the back of each certificate is a further one, dated the 4th of March, 1863, setting forth the manner of giving notice to the drawers and indorsers, the time of giving the same, &c. It was objected that this other certificate was not competent to prove the facts therein stated; that the law contemplates that it should be made at the time of the protest; and that if not thus made, the facts, if shown by the notary's certificate, must consist in authenticated copies of the record required to be kept by him under sections 198 and 199 of the Revision of 1860.

Our opinion is, that while the facts might be evidenced by the authenticated copy provided for in the statute, yet that the date of his certificate does not necessarily render it incompetent. In other words, as the usual protest of a notary is made *prima facie* evidence of what it recites concerning the dishonor and notice of a bill (§ 4011), the date at which he may make it does not necessarily render it invalid. He is a sworn officer, and his certificate, when accompanied with the necessary formalities, must be taken as presumptively correct. If his certificate, dated one year after the protest, would not be competent, neither would it be if dated one week. We understand that it may be filled up according to. the facts at the trial even. (Parsons' Mercantile Law, 111, and note.)

Affirmed.