Merrimack, }
June, 1895. }

New York Life Insurance Co. *v.* McKellar & a.

The surrender of a bond upon which A was liable is a sufficient consideration for a promissory note signed by A as principal and by B and C as sureties.

A promissory note executed in this state, but payable in Massachusetts and delivered there upon surrender of a bond held by the payees, is a Massachusetts contract, and the liability of the parties thereto is to be determined by the laws of that state.

Assumpsit, on a promissory note for $290, payable to the plaintiffs at Boston, Mass., in six months, with interest, and dated November 9, 1892. Facts agreed. The note is signed upon its face by one of the defendants, McKellar, while the names of the other defendants, Priest and Bell, are written across the back in the usual manner of indorsements. Priest and Bell, only, defend the suit, and place their defence upon the following grounds: (1) That the note was without consideration as to them; (2) that the note was a Massachusetts contract, and that by Massachusetts law they are discharged by the plaintiffs' failure to give them notice of non-payment by McKellar; (3) that they were sureties for McKellar, and have been discharged by an agreement between McKellar and the plaintiffs extending the time of payment of the note; (4) that material alterations of the note have been made by the plaintiffs.

The note was given under the following circumstances: McKellar was canvassing agent for the plaintiffs according to the terms of two written contracts, the first dated January 26, 1891, and the second dated February 29, 1892. McKellar began work, under the terms incorporated in the first contract, about January 1, 1891, and was to receive as compensation commissions on the policies written, according to terms set out in the contract; or, in lieu of the commissions, on written request, whenever a certain amount of insurance was placed in any week, he might under the contract receive a weekly loan of $20. From January, 1891, to February, 1892, McKellar received advances or loans to the amount of $20 per week for himself and various advances for sub-agents, whether he had placed the required amount of insurance or not. August 8, 1891, after frequent requests by the plaintiffs, McKellar gave a bond to the plaintiffs (filled out by them), with defendants Priest and Bell as sureties, for the sum of $500, conditioned for the faithful performance of McKellar's duties as agent for the plaintiffs. At the date of the bond, McKellar was indebted to the company in the sum of $990, of which

$380 was for advances to sub-agents.  When Priest and Bell signed the bond McKellar informed them that he owed nothing to the company, but no representations were made to or by the company except so far as McKellar may have made them.  On February 29, 1892, the plaintiffs cancelled McKellar's first contract, he being then indebted to the company to the amount of $1,717.88.  On that date a new contract was made, by the terms of which McKellar was to receive as compensation commissions at a certain rate on first-year premiums, while commissions on renewals were to be applied to reduce his indebtedness to the company, as specified therein.

October 31, 1892, the plaintiffs notified Bell and Priest that the company would hold them for the amount of the bond.  As a result, a conference was held in Boston, where it was agreed that the company should receive $204.17 in cash, being the total amount received by McKellar for premiums and not turned over to the company, and a note for the balance of the bond, drawn at six months, with interest, signed by McKellar and indorsed by Bell and Priest.  At that time McKellar's total indebtedness to the company was $1,134.63, the balance above the amount of $204.17 being advances made to McKellar and sub-agents.  In accordance with this agreement, cash to the amount of $210 was paid to the plaintiffs by the defendants, and the note in suit was delivered to the plaintiffs; and thereupon the plaintiffs cancelled and surrendered the bond.  The note was written by Bell, signed by McKellar, and indorsed by Bell and Priest, at Derry Depot, N. H., and delivered to the plaintiffs by McKellar at Boston, Mass., where the bond was surrendered.

*Sargent & Hollis*, for the plaintiffs.

*Greenleaf K. Bartlett*, for the defendants Bell and Priest.

PARSONS, J.  It is not material whether the defendants Priest and Bell were liable to the plaintiffs upon the bond or not. There is no question but that McKellar was indebted to the plaintiffs, and was liable upon the bond which was surrendered upon the giving of the note in suit.  His liability and the surrender of the bond was a sufficient consideration for the note; and a distinct consideration moving from the plaintiffs to the defendants, who entered into the undertaking prior to the delivery of the note to the payee, is unnecessary.  In *Savage* v. *Fox*, 60 N. H. 17, the defendant, a married woman, was sued as surety upon a promissory note.  The consideration of the note sued was a prior note given by the same person, which she also signed as surety.  At the time of signing the first note, she, as a married woman, had no legal capacity to enter into a contract of

suretyship, and the note was invalid as against her. The first note being valid against the principal, its surrender coincident with the defendant's contract of suretyship was held a good consideration for the note in suit. It is said : " ' The undertaking of one man for the debt of another does not require a consideration moving between them.' There being, in this case, a sufficient consideration for the note in suit as between the payee and the principal, it is immaterial whether the defendant was liable on the first note or not." *Savage* v. *Fox, supra,* 19. So, in the present case, the surrender of the bond upon which McKellar was admittedly liable, coincident with the defendants' promise as sureties, furnishes a sufficient consideration for their promise.

The defendants, having signed in blank upon the back of the note before its delivery to the payee, are, by the law of this state, liable as original promisors, and are not indorsers entitled to notice. *Phillips* v. *Johnson,* 64 N. H. 393, 400 ; *Currier* v. *Fellows,* 27 N. H. 366, 370; *Benton* v. *Willard,* 17 N. H. 593, 595; *Martin* v. *Boyd,* 11 N. H. 385. But by Mass. P. S., c. 77, s. 15, " Every person becoming a party to a promissory note payable on time, by a signature in blank on the back thereof, shall be entitled to notice of non-payment the same as an indorser." The defendants Priest and Bell were not notified of the non-payment of the note at maturity, and claim that their contract with the plaintiffs was a Massachusetts contract, governed by Massachusetts law, and that by the failure to give notice to them, such as indorsers would be entitled to, they are discharged. " The general rule is that the law of the place where the contract is made is to govern as to its nature, validity, construction, and effect (*Stevens* v. *Norris,* 30 N. H. 466, 470). . . . If, however, the parties to a contract have a view to its being executed elsewhere, it is to be governed according to the law of the place where it is to be executed. *Cox* v. *United States,* 6 Pet. 172, 203 ; *Warder* v. *Arell,* 2 Wash. (Va.) 282; Bish. Con., s. 731, and authorities cited. ' The primary rule in all expositions of this sort is that of common sense.' Sto. Conf. Law, s. 270. The object is to ascertain the real intention of the parties ; and to ascertain that intention, regard may be had to the nature of the instrument itself, the situation of the parties executing it, and the purpose they had in view. *Corwin* v. *Hood,* 58 N. H. 401 ; *Dyer* v. *Hunt,* 5 N. H. 401, 405. In short, the intention is to be ascertained from all competent evidence. *Crawford* v. *Parsons,* 63 N. H. 438." *Davis* v. *Insurance Co.,* 67 N. H. 218, 219. Applying these rules to the contract in question, there is no doubt that the parties contracted with reference to the laws of Massachusetts, and therefore the laws of Massachusetts should control their mutual rights and liabilities. As a result of notice from the plaintiffs that the company would hold the defendants Priest

and Bell for the amount of the bond, a conference was held between the parties in Boston, where it was agreed that the company should receive $204.17 in cash and a note for the balance of the bond, drawn at six months, with interest, signed by McKellar, and indorsed by Bell and Priest. There is no dispute that the entire contract, to carry out which the note was given, was made in Massachusetts. The note was written at Derry, in this state, and the signatures of the parties there attached, and the note delivered to the plaintiffs at Boston, where the note was payable, by McKellar, whereupon the plaintiffs cancelled the bond and surrendered it. In the delivery of the note to the plaintiffs at Boston, McKellar was the agent of the defendants and not of the plaintiffs. However broad McKellar's authority from the plaintiffs might be in general terms, it did not extend to an adjustment of the defendants' liability for his own default. Had the defendants given McKellar cash instead of the note to deliver to the plaintiffs, and thereby obtain the cancellation of the bond and the release of the defendants' liability, it would not be seriously contended that a payment to McKellar was a payment to the company so that the defendants were discharged if McKellar embezzled the money. The bond was not in the possession of McKellar when the note was delivered to him. The consideration of the note was the cancellation of the bond, and until that took place the note was without consideration. The note in suit, therefore, was given in furtherance of a Massachusetts contract, was delivered in Massachusetts, was payable in Massachusetts, and should be construed as a Massachusetts contract. The agreement was that the plaintiffs should have a note signed by McKellar and indorsed by Bell and Priest. Giving effect to the Massachusetts statute, the plaintiffs received in legal effect such a note as they agreed to receive, and the defendants assumed the liability they agreed to assume. Upon the plaintiffs' contention, the liability assumed by the defendants was different from what they contracted to assume and the plaintiffs to receive. Since by construing the written contract by Massachusetts law the contract is precisely what the parties expressly provided it should be, it conclusively follows that they intended the performance of the contract should be governed by Massachusetts law. If the plaintiffs' position, that the liability of an indorser is to be tested by the law of the place of indorsement, is well founded, to the application of this principle to the present case there are two answers: First, where the indorsement, though written in one state, is to take effect upon delivery in another, the indorsement is deemed to be made in the state of delivery. Sto. Conf. Law, *s.* 316, note; *Lee* v. *Selleck*, 33 N. Y. 615; *Cook* v. *Litchfield*, 9 N. Y. 279; *Gay* v. *Rainey*, 89 Ill. 221; *Chatham Bank* v. *Allison*, 15 Ia. 357. Second, the defendants are

not strictly indorsers. The Massachusetts statute only enacts that parties signing in this manner shall be entitled to certain rights of indorsers. They, with McKellar, entered into a contract with the plaintiffs to be performed in Massachusetts,—the place of payment. It is a general rule of law, that the *rights* of the parties to a contract, as distinguished from their *remedies*, are to be determined by the law of the place where the contract is to be performed. *Hyde* v. *Goodnow*, 3 N. Y. 266, 269. The liability of the maker of a note executed in one state and payable in another, is controlled by the law of the state in which his engagement is to be performed. *Lee* v. *Selleck, supra ; Little* v. *Riley*, 43 N. H. 109, 113; and authorities above cited. Under the law of Massachusetts, the defendants were only conditionally, not absolutely, obligated to performance. *Bank* v. *Law*, 127 Mass. 72. The condition (notice) has never been complied with, and the defendants are not in fault.

The plaintiffs' further position, that under Massachusetts law the defendants would not be entitled to notice, is equally unfounded. It is undoubtedly true that where the note is an accommodation note by the maker for the benefit of the indorser, the indorser is not entitled to notice of non-payment (Sto. Pr. Notes, *s.* 268), for the reason that as primarily, between him and the maker, the indorser is bound to pay the note, he cannot be injured by want of notice of non-payment by the maker. Such is not the present case. The debt was primarily McKellar's. It was one which, as between him and the defendants, McKellar was bound to pay ; and which, if they paid, they could exact from him. In the second place, the plaintiffs agreed to accept in exchange for the bond the conditional liability of the defendants instead of a primary and original one. The defendants were sureties for McKellar on the bond. They were sureties on the note, in fact. They were not made principal debtors by a change in form or renewal of their liability.

Before the maturity of the note, by an agreement with McKellar, the plaintiffs extended the time of payment three months. It is conceded that this extension, if by a valid agreement, would release the defendants. But as this is an agreed case and the parties are not agreed as to the meaning of the case in this respect, justice might require, in case the decision turned upon this point, that the parties should be relieved from their agreement as to this and be permitted to try the question of the validity of the agreement. The view we have taken of the foregoing questions renders it unnecessary to determine this question, or to consider the effect of the erasure of the indorsements of payments from the note. In accordance with the stipulations of the reserved case, there should be .

*Judgment for the defendants.*

All concurred.