## J. C. Vaughan v. Edwin A. Potter, Receiver.

### Gen. No. 13,005.

1. INDORSER—*what essential, what not, to fasten liability upon.* Protest is not, but presentment and notice are, essential to fasten liability upon an indorser of a promissory note.

2. PROMISSORY NOTE—*within what time notice of dishonor must be given indorser.* In Illinois, notice of dishonor must be given to an indorser upon the day of dishonor or upon the succeeding day.

3. PROMISSORY NOTE—*within what time presentment for payment must be made.* Presentment for payment of a promissory note must be made within reasonable hours on the day of maturity.

4. PROMISSORY NOTE—*what law governs time of proper presentment.* The law of the place of performance governs the question of the proper time of presentment and payment of a promissory note.

5. PROMISSORY NOTE—*what not competent proof of presentment and notice of dishonor.* The certificate of a foreign notary as to presentment and demand for payment and notice of dishonor, are incompetent to establish or to tend to establish such facts as to a promissory note, although evidence of them as to a foreign bill of exchange.

6. PROMISSORY NOTE—*when due notice of dishonor given.* If notice of dishonor is duly addressed and deposited in the mail, the sender is deemed to have given due notice and his rights are saved, although the notice may never have been received.

7. PROMISSORY NOTE—*when indorser discharged by failure to give notice of dishonor.* Where the holder of a promissory note

Vaughan v. Potter.

indorsed the same and sent it to another bank in another state for collection and such bank by its agent sent notice of dishonor to the holder of such note, and in the same envelope and in the care of such holder sent a notice of dishonor to the first indorser, which the holder of the note receiving, neglected to send to such first indorser for some weeks thereafter, the indorser is discharged from liability.

Action of *assumpsit*. Appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1906. Reversed and judgment here. Opinion filed February 7, 1907.

HENRY W. MAGEE, for appellant.

ADAMS & FROEHLICH, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

Edwin A. Potter, as receiver of the National Bank of Illinois, brought suit in the Superior Court of Cook county against J. C. Vaughan as indorser on the following note:

"$114.12.                          CHICAGO, Oct. 26, 1896.

Sixty days after date I promise to pay to the order of J. C. Vaughan one hundred fourteen and 12/100 dollars at Midland National Bank, Kansas City, Mo., value received with interest at seven per cent. per annum, after maturity until paid.

                              JOHAN SCHNEIDER,
                         921½ Walnut Street,
                                   Kansas City.

Due Dec. 26, 1896."
Indorsements:

        "J. C. VAUGHAN.
Dec. 28, 1896,
        protested for non-payment.
                DAVID THORNTON,
                    Notary Public."

This is the copy of the note which appears in the bill of exceptions as the transcript of Plaintiff's Exhibit 1.

By what purports to be a copy of the same note attached to the notary's certificate of protest, hereinafter described, and also admitted in evidence as a plaintiff's exhibit, there appears another indorsement which from the rest of the record it is plain must have been on the note at the time it was presented at the place of payment at Kansas City, but which did not appear thereon when offered in evidence. It is:

"Pay to the order of any Bank or Banker. Dec. 18, 1896.

THE NATIONAL BANK OF ILLINOIS,
CARL MOLL, Cashier."

We mention this, not because we hold it to be a part of the note as it appeared in evidence, but to render clearer our subsequent discussion of the presentment, protest and notice.

The cause was submitted to the court without a jury, and after evidence had been heard, a finding and judgment for the plaintiff for $186.52 were entered by the trial judge. The defendant excepted to the finding and judgment, and has appealed to this court from the same, with a sufficient assignment of errors to cover the objection he makes to the judgment, which is that the necessary steps were not taken at the maturity of the note to hold him as an indorser. It is conceded the only liability of the defendant on the note is that of an indorser, but the plaintiff contends that everything requisite under the law has been done to fix that liability.

Indeed, as an alternative proposition he makes the contention that no "presentment," "protest" or "notice" was necessary on this note to hold the indorser, because the maker at the time of its maturity resided out of the state. To that he cites Barber v. Bell, 77 Ill. 490, decided in 1875. There might be many more cases decided before the Illinois statute of 1895 on the liability of assignors and holders was passed, holding, as did Barber v. Bell, that no "presentment" to the maker or "notice" to the indorser, as those terms are

used in the law merchant, were necessary to fix the liability of an indorsing assignor of a note in Illinois, and that although prosecution of the maker to insolvency with diligence was necessary in most cases before the indorser could be made to respond, yet such prosecution was not necessary where the maker had absconded from or resided out of the state when the note became due.

But these decisions and this former state of the law in Illinois have nothing to do with this note, which was given and indorsed more than a year after the law of Illinois concerning promissory notes payable in money was changed and brought into conformity with the law merchant prevailing elsewhere.

"Protest," it is true, as is hereinafter pointed out, was not made by the legislature necessary to fix the liability of an indorser on a promissory note. It never had been necessary by the law merchant. But "presentment" and "notice" were so made necessary by the following provision: "The rights of the lawful holders of promissory notes payable in money, and the liability of all parties to or upon said notes shall be the same as that of like parties to inland bills of exchange according to the custom of merchants." This was practically an enactment for the first time in Illinois of the well known statute of 3rd and 4th Anne, which brought to an end the opposition of Lord Holt and other common law judges to considering promissory notes as within the provisions of the law merchant in relation to negotiable instruments. By this act of the Legislature, approved June 4, 1895, the former requirement of prosecution of the maker to insolvency and its correlated exceptions were retained, so far as notes payable in other things than money were concerned, but abolished as to the ordinary notes payable in money. The liability of an indorsing assignor as to such notes was made the same as "that of like parties to inland bills of exchange according to the custom of merchants." The "liability of an in-

dorser of an inland bill of exchange according to the custom of merchants'' is only that he will pay the same after due presentment on the day of maturity at the place it is made payable, or to the person primarily liable, if it is there or by such person dishonored, provided notice of such dishonor is given to him (the said indorser) within the time required by law, which, in the absence of statute regulating it, has been usually held to be the day of dishonor and the succeeding day. If these requirements are not complied with, the indorser of an inland bill of exchange is discharged, and since the Act of 1895 the same thing is true of an indorser of a promissory note payable in money in Illinois.

Presentment at maturity and notice of dishonor are excused in certain exceptional cases, not necessary to be here enumerated. Neither the maker's residence in another state or abroad, nor his insolvency, furnishes such an excuse. The note in this case was made payable at a designated place, and unless presented there for payment within reasonable hours on the day of maturity, and notice of dishonor given within forty-eight hours thereafter to the defendant, he is not liable on his indorsement.

The plaintiff in this case attempted to make proof of this due presentment and notice by the introduction of the certificate of a notary public for the county of Jackson, in the State of Missouri, that on December 28, 1896, at the request of the Union National Bank of Kansas City, he presented the note at the Midland National Bank of Kansas City and demanded payment, which was refused, and that he thereupon protested the paper, of all of which he certifies, ''I have given due notice to the parties concerned as follows, by written notice of protest duly sent by U. S. mail to them, respectively, to-wit:

To J. C. Vaughan, all addressed Carl Moll, Cashier.

To Carl Moll, Cashier, all addressed National Bank of Illinois, Chicago, Ills.''

The first objection made by the defendant to this

proof is that it does not purport to show presentment at the maturity of the note, but three days after said maturity, which was too late. If there were any competent evidence of the presentment or notice in the case, which, as we shall point out, there is not, and if the report of a case (Turk v. Stahl), decided by the Missouri Supreme Court, was to be considered properly proven, when offered and admitted in evidence (concerning which, considering the meagre information which the record gives us about it, it is not necessary to express an opinion), this objection would not be tenable. The contract of the maker was a Missouri contract; that of the indorser—it being conceded that he made the indorsement in Illinois—is an Illinois contract. But the time of maturity of the paper enters into both contracts, and the law of the place of performance governs the question of the proper time of presentment and demand. Bigelow on Bills, Notes and Cheques, Chapter XX; Parsons on Bills and Notes, vol. 1, 640; Chatham Bank v. Allison, 15 Iowa, 357.

If the opinion of the Supreme Court of Missouri in Turk v. Stahl was properly proven in this case, it showed that in 1873 grace was allowed on promissory notes in Missouri. It would be presumed, in the absence of other evidence in the case, that this state of the law existed until 1896, and that the note in question did not mature until December 28, 1896, when it purports to have been protested. We think the Missouri law in this regard is sufficiently pleaded in the declaration; which in one of its amended counts explicitly charges that December 28th was the date of maturity under the law of Missouri.

But a fatal objection to the plaintiff's case is that there was no competent proof offered of the presentment at the Midland National Bank on December 28, 1896, nor on any other day, nor any evidence of notice, actual or attempted, to the indorser on that or any subsequent day, except that Mr. Vaughan himself testified that he received notice four or five weeks after this

date that a demand or protest of the note had been made.

The certificate of the Jackson county, Missouri, notary public is no proof of the matters contained therein.

It is necessary first to note that the law merchant knows nothing of protest, in the case of promissory notes or inland bills of exchange. A foreign bill of exchange must on dishonor be protested to hold the indorsers, and the states of the American Union are foreign to each other for the purposes of this law. The notarial certificate of protest by a foreign notary is, in the case of such instruments, not only evidence of the presentment, dishonor and notification of indorsers, but frequently the only evidence allowable by the law merchant. But our statute does not make the liabilities and rights of an indorser of a promissory note, whether made in or made out of the state, the same as that of the indorsers of a foreign bill of exchange. It makes his liabilities and rights the same in each case as those of the indorser of an inland bill of exchange.

As we have said, "of the protest of inland bills and notes and cheques the unwritten law merchant knows nothing" (Bigelow on Bills, Notes and Cheques, chap. 10, sec. 1), and in consequence, unless statute law makes it otherwise, the certificate of protest is not evidence of a demand and notice of dishonor.

The Supreme Court of the United States early decided this, and the language of Judge Johnson in that court in Union Bank v. Hyde, 6 Wheaton, 572, decided in 1821, is worth quoting: "Protest belongs altogether to foreign mercantile transactions upon which it is an indispensable incident to making a drawer of the bill or indorser of the note liable. On foreign bills it is the evidence of demand and an indispensable step toward the legal notice of non-payment, in consequence of which the undertaking of the drawer or indorser becomes absolute; hence as to foreign transactions it is

justly predicated of the protest that it has a legal or binding effect.

"But the writing under consideration has reference exclusively to inland bills, and as to them the protest has no legal or binding effect. The indorser became liable only on demand and notice, and of these facts the protest is no evidence.

"By some assumed analogy or mistaken notions of law, this practice of protesting inland bills has now become very generally prevalent, and since the inundation of the country with bank transactions and the general resort to this mode of exposing the breaches of punctuality which occur upon notes, a solemnity, cogency, and legal effect have been given to such protests in public opinion, which certainly has no foundation in the law merchant. The nullity of the protest on the legal obligations of the parties to an inland bill is tested by the consideration that independently of statutory provision (if any exists anywhere) or conventional understanding, the protest of an inland bill is no evidence in a court of justice of either of the incidents which convert the conditional undertaking of the indorsers into an absolute assumption."

When the case of Union Bank v. Hyde was decided, there was no statute in Illinois altering the unwritten law merchant in regard to protest of inland bills or promissory notes in any respect, but by an Act approved December 30, 1828, the legislature enacted into law practically the same provisions as are now contained in the chapter on Notaries Public in the Revised Statutes, as follows:

"It shall be the duty of each and every notary public in this state, whenever any bill of exchange, promissory note, or other written instrument shall be by him protested for non-acceptance or non-payment, to give notice in writing thereof to the maker and to each and every indorser of any bill of exchange, and to the maker or makers of each and every security or indorser

of any promissory note, or other written instrument, on the same day the said protest is made or written, forty-eight hours from the time of such protest.

"Each notary public shall keep a correct record of all such notices and of the time and manner in which the same are served, the names of all the parties to whom the same are directed, and the description and amount of the instrument protested. Said record, or a copy thereof, duly certified under the hand and seal of the notary public or county clerk having the custody of the original record, shall be competent evidence to prove the facts therein stated, but the same may be contradicted by other competent evidence."

But this statute of 1828, although making it permissible to protest promissory notes and inland bills of exchange, did not make it necessary to do so; and, in making a statutory rule of evidence for the courts of Illinois about the records of officers of Illinois, viz., "notary publics in this State," did not make the records or certificates of notaries public out of this state and not its officers, evidence in this state in cases where before they were not so.

So the Supreme Court decided in Bond v. Bragg, 17 Ill. 69, and McAllister v. Smith et al., 17 Ill. 328, nearly thirty years after this statute had been on the statute books.

In Montelius v. Charles, 76 Ill. 303, the Supreme Court held that in the case of an inland bill of exchange made and payable in this state, a notarial certificate of protest made by a notary public in this state was prima facie evidence of demand of payment and notice of dishonor; but it expressly avoided overruling Bond v. Bragg and McAllister v. Smith, distinguishing them by saying that the question therein was in relation to protests in other states and did not involve the Illinois statute. Inadvertently it speaks of the protests, in both cases being of bills of exchange. In Bond v. Bragg it was of a promissory note.

Similar statutes in other states as to the effect of

a notary public's record and certificate have been in such states construed in the same way, as referring only to their force in those states respectively. Eaton and Gilbert on Commercial Paper, chap. XV., sec. 155 (c); Kirtland v. Wanzer, 2 Duer, 278.

As we hold that there was no competent evidence of the necessary presentment, demand and notice in the case below, this judgment would in any event have to be reversed. It might, however, be said that if the judgment is reversed only for this admission of incompetent evidence, the cause should be remanded to allow the plaintiff, if possible, to prove by competent evidence the matters set forth in the notary's certificate.

As we believe it best, in the view we take of this case, to end the litigation here, we shall briefly discuss the question whether the facts set forth in the notary's certificate, if proven, would be sufficient to charge the defendant when taken in connection with other facts which were affirmatively proven. In our opinion they would be sufficient to show presentment and demand at the proper place and time, but they would not be sufficient to prove the requisite prompt notice of dishonor to the defendant.

The certificate as to this is that there was sent by the notary public notice of protest (which involves notice of dishonor) by United States mail to "J. C. Vaughan, addressed Carl Moll, Cashier." It is apparent from the certificate as to notice to "Carl Moll, cashier, addressed National Bank of Illinois, Chicago, Illinois," that following a usual custom of notaries, the notary in this case sent a notice to the last indorser, the National Bank of Illinois, or Carl Moll, cashier thereof, and enclosed with it the notice to the preceding indorser, J. C. Vaughan, the assumption upon his part being that the last indorser to protect itself would give notice to the first one, and that the notary and the holder in any case would be protected by the law on the showing of this attempted notice

according to the best address reasonably possible to secure.

The notary acted at the request and as the agent of the Union National Bank of Kansas City, which, as the holder of the paper (although probably only for collection), was the proper party to make or cause to be made the presentment and demand and, to give or cause to be given the notice.

After much difference of opinion, it may be considered as settled that if notice of dishonor is *duly addressed* and deposited in the mail, the sender is deemed to have given due notice, and his rights are saved, although the notice may never have been received. And it has also been held in Massachusetts, if notices in due form directed to all the indorsers of the nonpayment of the note are seasonably put into the post office under cover to the last indorser, this action is according to the usage and practice of merchants and bankers, and shows a sufficient compliance with the rule of law requiring notice to indorsers of dishonor. Wamesit Bank v. Buttrick, 11 Gray, 387. It was also held in the same case that it is immaterial that the holder or last indorser held the note for collection only. This rule was adopted partially in Iowa in Van Brunt v. Vaughn, 47 Iowa, 145, the limitation being that such notices are good only if the party to whom the notices are primarily addressed himself promptly sends them on. It is not free from doubt whether the rule adopted in Massachusetts, springing, as Bigelow says, "more or less from the custom of cities" (Bigelow on Bills, Notes and Cheques, chap. X, sec. 5), is supported by the weight of authority, although it seems reasonable and in accordance with the necessities of business. But giving it the fullest possible effect which is reasonable, it would not cover the case at bar. No court has gone so far as to say that a note can be collected by the final indorser or holder against a prior indorser when notice for that prior indorser has been sent in the care of the later one and he has neglected to forward it

promptly. That is the present case. The plaintiff is suing in the right of the National Bank of Illinois. Vaughan had discounted the note there. The National Bank of Illinois had sent the note for collection, merely, to the Union National Bank of Kansas City; the Union National Bank of Kansas City by its agent sent notice of dishonor to the National Bank of Illinois, and in the same envelope and in care of the National Bank of Illinois, a notice to Vaughan. The National Bank of Illinois neglected to send the notice on to Vaughan (the reason, considering the dates, may be easily surmised if that were proper and material), and Vaughan did not get any notice of dishonor for four or five weeks after the maturity of the note, during which time the financial condition of the maker was changed. To hold that under these circumstances the National Bank of Illinois, or its receiver, could recover against Vaughan, would be to overthrow all the reasoning of the law merchant on the rights and liabilities of indorsers of negotiable paper.

The cause was tried below without the intervention of a jury, and we ought here to enter the judgment which should have been entered below. That judgment is that the plaintiff should take nothing by his action, that the defendant should go without day, and that the costs should be taxed against the plaintiff.

*Reversed, and judgment for the defendant on the issues and for costs in both courts.*