GEO. KERN, Plaintiff in Error, vs. VON PHUL, WATERS & Co., Defendants in Error.

ERROR TO THE DISTRICT COURT OF WASHINGTON COUNTY.

An indorser of a promissory note cannot show by parol that at the time he indorsed the note it was agreed that his indorsement was not to create any liability against him, but was to be without recourse.

The certificate of a notary public that he demanded payment and gave notice of the dishonor of a note to the indorsers, is *prima facie* evidence of the facts stated in it, under the act of July 26, 1858.

A notice of protest served by mail on the 3d day of April, 1858, upon a party residing in the same town where the notice was mailed, was authorized by the statute of 1856, then in force.

If a notice of protest was properly folded and addressed, it would be sufficient under the statute, whether under cover of what is popularly called an "envelope" or not. Nor was it essential to the validity of a protest, that a notary should keep a record of the same.

Points and Authorities of Plaintiff in Error.

I.—We claim that under *sec.* 6, *art.* 6, *chap.* 4, *R. S.*, which was in force at the time the note described in the complaint in this action was protested, the record of the notary, or a certified copy thereof, kept as directed by said provision, is the only admissible evidence to prove notice to the endorsers,

and the other facts which by law such record ought to contain.

That even if said certificate were admissible at all, it is secondary evidence, and could only be admitted after the absence of the record was accounted for.

II.—In regard to the service of the notice of protest, it does not appear by said certificate of protest, or by any evidence in this case that said notices were properly enveloped, or that they or any or either of them were enveloped at all. *Sec.* 5, *chap.* 5, *Laws* 1856.

III.—In regard to the admissibility of evidence to show the circumstances under which the Defendant, Kern, indorsed said note, see *Parsons on Contracts, Vol.* 1, *p.* 65.

In this case we aver, and were ready to prove, that the Defendant, Kern, in fact indorsed said note without recourse; that the said contract of indorsement was one and entire, and that we had a right to prove the part which did not appear on the written contract itself; and that the fact that the Defendant, Kern, indorsed said note without recourse, as aforesaid, was made known to the Plaintiffs at the time the note was transferred to them. *Rey et al. vs. Simpson*, 22 *How. p.* 341; *Story on Prom. Notes, sec.* 479; *Bright vs. Carpenter*, 9 *Ohio, p.* 39; 14 *U. S. Dig. p.* 489, 490; 13 *id.* 543; 10 *id.* 373; 11 *id.* 389; 21 *Pick.* 195; 11 *Mass.* 27; 5 *Sergeant & Rawle*, 363; *Mood & Walk.* 226–7–8; 11 *Conn.* 213; 6 *Mass.* 430, 433–4; 1 *Peters*, 89; 4th *Vol. Phillips on Ev. with Cow. & Hill's Notes, p.* 600; 5 *Vt.* 161.

IV.—It is not enough that the notice of protest should be directed to the indorsers at Stillwater, but the County and State, or at least one of them, should be named, for there are several places by the name of Stillwater; hence directing a notice to Stillwater simply, is not a sufficient compliance with the statute, and no notice at all, and the Court erred in admitting the certificate under the second objection.

V.—Under the statute in force at the time this note was protested, it was incumbent upon the notary to keep a record of his doings, and all acts in matters of protesting notes and bills of exchange. And the notice and certificate, if evidence at all, was on the ground that it was a copy of the record

of the notary. Consequently the Court erred in refusing to permit the Defendant to show that the notary kept no record at any time.

In all cases where the notice is left at a particular post office, directed to the indorsers at that office, the service is bad.

Again when the notice of protest is served the same day of the maturity of the note, it must appear affirmatively that it was served after the dishonor, and that does not appear in this case. The law recognizes no fractions of a day, and he who claims the benefit of the fraction, must show clearly that he is entitled to it, and not leave it to be inferred or presumed. *Story on Prom. Notes, pp.* 401–2. In this respect the notarial certificate is clearly defective.

### Points and Authorities of Defendants in Error.

I.—Under our statute it is required that notice of the protest of any note or bill of exchange, shall be given to the indorsers and other parties thereto, and this is a sufficient notice of the dishonor of the bill. The complaint alleges notice of the " demand and protest " of the note to the indorsers, which we think would be sufficient at common law, and is certainly good under our statute and forms of pleading. *Comp. Stats.*, sec. 95, *p.* 134; *id.* sec. 64, *p.* 540.

II.—We do not admit that Defendant, Kern, could not be made liable except his prior endorsers are duly notified of the nonpayment of the note. But under the statute and the decisions of this Court, Thompson & Parker *were* duly notified, and they are made parties in this action, and admit upon the record their liability as first endorsers. Defendant Kern cannot dispute this for them. A service of the notice of protest through the post office, on indorsers residing in the same town, was proper under the law of 1856. *Levering et al. vs. Washington,* 3 *Minn.,* 323; *Sess. Laws,* 1856, *chap.* 5, sec. 4.

The fact that the records of notaries public are made evidence does not interfere with the force and effect of their certificates of protest, which were evidence at common law, and are expressly declared by our statute to be evidence. *R. S. sec.* 10, *p.* 44.

III.—The Court below, in excluding the testimony offered by Defendant Kern, was clearly right. The proof showed Kern to be an indorser in blank upon a negotiable promissory note, coming into the hands of the Plaintiffs before maturity, in the regular course of business. *Greenl. Ev. Vol.* 1, sec. 277; *Levering et al. vs. Washington*, 3 *Min.* 323; *Walters et al. vs. Armstrong*, 5 *Minn.* 448; *Borup et al. vs. Nininger*, *id.* 523.

Daniels & Grant, Counsel for Plaintiff in Error.

Wm. M. McClure, Counsel for Defendants in Error.

*By the Court*—Flandrau, J.—The main question presented by this case is whether an indorser of an ordinary negotiable promissory note, can plead and prove that he had a parol understanding at the time he put his name on the note, by which he was not to be liable on his contract, or in other words that he was an indorser without recourse. At first thought such a proposition would seem to be in direct hostility to the well known and most familiar of all rules of law, that parol evidence is not admissible to contradict or vary the terms of a written instrument; but when an examination of the authorities is made, a great many decisions can be found which tend strongly to innovate upon the above rule, all claiming to observe and adhere to it, yet finding some special circumstances in the particular case upon which to base a distinction, and thus evade its rigorous operation. There is a natural desire which is founded on legal principles, to impose some character of liability upon a party who signs his name to a contract. This just inclination of the judicial mind, in its efforts to prevent an entire failure of liability, has led to serious encroachments upon the verity and integrity of written instruments, more particularly in regard to promissory notes and bills of exchange than any other species of contracts.

A great deal of this confusion and misapplication of principle has arisen from that class of cases where a note is

drawn payable to the order of one party, and is endorsed by another previous to its delivery to the payee, and the latter seeks to make the former responsible to him. Since the case of *Jossellyn vs. Ames*, 3 *Mass. R.*, 274, the question of admitting parol evidence to show the relation of parties to each other, and to fix their relative liabilities upon such paper, has received the adjudication of almost all the courts of this country, and the weight of authority is decidedly in favor of the competency of such evidence. Whether this is a departure from principle to meet the exigencies of a special case, it is needless now for this Court to determine. When we succeeded the Supreme Court of the Territory of Minnesota, we found three decisions of that Court upon the records adopting the general current of decision. (1 *Minn. R.*, 369, 380, 383.) We followed the precedent in several cases, and think it should now be regarded as the settled law of the State. 2 *Minn. R.*, 139, 147.

The attempts that have been made to apply the rule recognized by these cases to others bearing analogy, have gradually and insidiously undermined the rules of evidence and introduced uncertainty and insecurity into a system which should rest upon principle alone. It is not our purpose to extend a rule which we deem questionable. In the course of our investigations we have been frequently called upon to examine questions kindred to the one at bar, and have in every instance, where we were untrammelled by the precedents of our own Courts, adhered with strictness to the immutability of written instruments when assailed by parol evidence. *Levering & Morton vs. Washington*, 3 *Minn. R.*, 233; *Walters vs. Armstrong*, 5 *Minn. R.*, 448; *Borup vs. Nininger*, 5 *Minn. R.*, 523; *Peckham & Spencer vs. M. D. Gilman & Co.*, decided at this term.

In the case at bar the Defendant Kerns wrote his name on the back of the note without restriction or qualification. That alone imports a contract just as well known in the law as if it was all written out over the signature. *Story on Prom. Notes*, sec. 135. He now seeks to prove by parol that the essence of the contract, which *prima facie* his name creates,

was extracted by a parol reservation at the time the indorsement was made; or in other words that his contract was to impose no liability or obligation upon him. We do not think it can be done. The contract of indorsement does not fall within the class of contracts, that being partly reduced to writing, and partly resting in parol, may be established as an entire obligation or agreement: These contracts are generally characterized by some incompleteness in the written part, indicative of other stipulations being necessary to its perfection, or some kindred feature that takes them out of the ordinary rule. An indorsement lacks no element of perfection. It creates a contract, the obligations and liabilities of which are as well settled as any known to commerce. It therefore is not subject to be varied or defeated by a cotemporaneous verbal agreement.

The counsel for the Defendants seems to have fallen into an error of fact about the allegation of notice of dishonor having been served on the indorsers, being in the complaint. We find a full allegation to that effect in folio 20 of the paper books. The note was protested on the third day of April, 1858. At that time the service might be made by mail even upon a party resident within the town where the notice was mailed. *Old R. S., chap. 4, art. 6, sec. 5, as amended by sec. 4 of the Laws of* 1856, *p.* 5, 6; 3 *Minn. R.,* 323. The notaries were by section six of the same act required to keep a record of the notices so served, and such record was made evidence. On the 26th of July, 1858, the law above referred to was repealed, (*Comp. Stats.,* 135, *sec.* 101,) and a new law enacted which allows the "instrument of protest accompanying any bill of exchange or promissory note which has been protested," &c., to be evidence of the facts stated in it. *Comp. Stats., p.* 134, *sec.* 96. This section refers as well to past as future protests. The trial of this action came on in April, 1862. The notarial certificate was therefore evidence under the law of 1858, which was in force.

If a notice was properly folded and addressed, it would be sufficient whether under cover of what is popularly called an "envelope" or not, nor is it essential to the validity of a protest that the notary should keep a record of the same. It

might have been difficult or impossible to prove it under the law of 1856, if no record was made, but the law of 1858 furnished another mode.

We see no error in the record, and the judgment of the Court below must be affirmed.