## CHARLES MONTELIUS *et al.*

*v.*

## JOHN H. CHARLES.

1. BILL OF EXCHANGE—*presentment and notice to hold drawer.* All drafts, whether foreign or inland bills, must be presented to the drawee within a reasonable time, and in case of non-payment, notice must be given promptly to the drawer to charge him.

2. SAME—*time of presentment.* Where a bill of exchange, payable on sight, is immediately put in circulation, there is no fixed period in which it must be presented for payment in order to hold the drawer. The only rule is, that it must be presented in a reasonable time, and what is a reasonable time depends upon the peculiar facts of each case viewed in the light of commercial usage.

3. In this case, the draft, drawn upon a bank in Chicago, was mailed on the same day it bore date, to the proper address of the payee, in Dacotah territory, and was received by him after some delay in the mail, and he, upon the first opportunity, put the same in circulation, and it was kept in circulation, and no delay was suffered other than that incident to the transaction of business in a sparsely populated territory, and the same was presented for payment thirty-five days after its date, and payment being refused, it was protested, and notice given by mail to the drawer, and it was held that the drawer was liable.

4. EVIDENCE—*certified copy of notary's record.* The statute, making a notary's record of the protest of bills which he is required to keep, or a

certified copy thereof, *prima facie* evidence of the facts therein stated, applies to all bills, whether domestic or foreign. Such record or copy is *prima facie* evidence of demand of payment of the drawee, and of notice of dishonor to the drawer, liable, however, to be rebutted by other competent evidence.

APPEAL from the Circuit Court of Ford county ; the Hon. Thomas F. Tipton, Judge, presiding.

This was an action of assumpsit, brought by John H. Charles, against Charles Montelius and John A. Montelius, upon a draft for $291. The facts of the case will appear in the opinion, except that the following is a copy of the notary's protest and certificate :

"State of Illinois,     ⎫
*County of Cook, City of Chicago.* ⎬ *ss.*
                             ⎭

Be it known, that, on this 13th day of October, A. D. 1873, I, Joseph M. Bowman, a notary public, duly commissioned and sworn, and residing in the city of Chicago, in said county and State, at the request of Merchants' National Bank, went with the original draft, which is above annexed, during business hours, to the office of Franklin Bank, and demanded payment thereof, which was refused. Whereupon I, the said notary, at the request aforesaid, did protest, and by these presents do solemnly protest, as well against the drawers and indorsers of said draft as against all others whom it doth or may concern, for exchange, re-exchange and all costs, charges, damages and interests already incurred by reason of the nonpayment of the said draft. And I, the said notary, do hereby certify that, on the same day and year above written, due notice of the foregoing protest was put in the postoffice at Chicago, as follows: Notice for Franklin, Chicago; notice for C. Montelius & Son, Piper City ; notice for John Strank, John H. Holsey, John H. Charles and Thos. J. Stone, First National Bank, Sioux City, Iowa, each of the above named places being the respective place of residence of the person to whom this notice was directed.

In testimony whereof, I have hereunto set my hand and affixed my official seal the day and year above written.

[L. S.]                               JOSEPH M. BOWMAN,
                                           *Notary Public."*

"STATE OF ILLINOIS, }
    *County of Cook.*   }

I, Joseph M. Bowman, a notary public, for the county and in the State aforesaid, do certify that the within is a true copy of the record of protest described therein, as appears on my docket.

· In witness whereof, I hereunto set my hand and seal this 24th of February, 1874.

                                      JOSEPH M. BOWMAN,
[L. S.]                                 *Notary Public."*

· Messrs BROWN & MOSNESS, for the appellants.

Messrs. BEACH & KINNEAR, for the appellee.

· Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action was upon an inland bill of exchange, in the name of a remote assignee, against the drawers. One important question is, whether the holders had been guilty of such *laches* before presenting it to the drawee for payment, as would bar a recovery against the drawers.

Defendants were engaged in the banking business at Piper City, in this State. On the 8th day of September, 1873, on the application of James McBride, they drew their draft on the Franklin Bank of Chicago, payable at sight, to the order of John Strank, who then resided at Canton, in Dakotah. It was, on the same day, deposited in the postoffice, directed to the payee at Canton, who received it after some delay, attributable alone to the fault of the mails. Having passed through the hands of several holders, it was presented on the 13th day of October, 1873, to the bank for payment, which, being refused, it was protested, and notice given through the postoffice to the drawers and the several indorsers. In the

meantime, the Franklin Bank, on which the draft had been drawn, had failed and gone into bankruptcy.

The law is settled, by an unbroken line of decisions, that all drafts, whether foreign or inland bills, must be presented to the drawee within a reasonable time, and in case of non-payment, notice must be given promptly to the drawer, to charge him. But what is a reasonable time, under all the circumstances, is sometimes a most difficult question. The general doctrine is, each case must depend on its own peculiar facts. and be judged accordingly.

In *Strong* v. *King*, 35 Ill. 9. it was declared to be a general rule, the holder of a sight draft must put it in circulation or present it for payment, at farthest, on the next business day after its reception, if within the reach of the person on whom it is drawn. In the case at bar, the draft was put in circulation. and the point is made, the mere fact it was not presented for payment until after the lapse of thirty-five days, is *per se* such *laches* on the part of the holders as would discharge the drawers.

In *Muilman* v. *D'Eguino*, 2 H. Black. 565, Eyre, C. J., said : "Courts have been very cautious in fixing any time for an inland bill, payable at a certain period after sight, to be presented for acceptance, and it seems to me more necessary to be cautious with respect to foreign bills payable in that manner. If, instead of drawing their foreign bills, payable at usances in the old way, merchants choose, for their own convenience, to draw them in this manner, and make the time commence when the holder pleases, I do not see how the courts can lay down any precise rule on the subject. I think, indeed, the holder is bound to present the bill in a reasonable time, in order that the period may commence from which the payment is to take place. The question, what is a reasonable time, must depend on the peculiar circumstances of the case, and it must always be for the jury to determine whether *laches* is imputable to the plaintiff."

BULLER, J.: "Due diligence is the only thing to be looked at. whether the bill be a foreign or an inland one, and whether it be payable at sight, at so many days after, or in any other manner. But here I must observe, that I think a rule may thus far be laid down with regard to all bills payable at sight, or at a certain time after sight, namely : that they ought to be put in circulation. If they are circulated, the parties are known to the world and their credit is looked to ; and if a bill, drawn at three days' sight, were kept out in that way for a year, I can not say there would be *laches*. But if, instead of putting it in circulation, the holder were to lock it up for any length of time, I should say he was guilty of *laches*."

Bills, both inland and foreign, having the quality of negotiability, are intended, in some degree, to be used as a part of the circulation of the country, and are indispensable in the conduct of extended commercial transactions. They afford a safe and convenient mode of making payments of indebtedness between distant points. Banking houses that, for a consideration, issue such bills, must be understood to do so in accordance with the known custom of the country—that they will be put in circulation for a limited period. If this were not so, their value would be greatly depreciated, and their utility in commercial transactions would be destroyed. Were it understood the purchaser of such a bill was bound to make all possible dispatch to present it to the drawee or lose his recourse on the drawer, no prudent man would feel safe in taking one. He may know the drawer from whom he purchases the bill, and be willing to rely on his responsibility, but in many instances he has and can have no knowledge of the drawer's correspondent, the drawee. Commercial usage has, therefore, placed the responsibility upon the drawer, and he is presumed, in consideration of the premium paid, to assume all risks as to the solvency of the drawee, for such reasonable time as the bill shall be kept in circulation. There can be no doubt, if the holder locks it up and keeps it out of

circulation, he assumes all risks, and in case the bill is dis-honored, his *laches* in that regard would bar a recovery against the drawer. Such bills are not issued with a view to be held as a permanent security, with a continuing liability on the drawer. Illustrative of the law of this branch of the case, is *Shute* v. *Robbins,* 3 C. & P. 80.

The difficulty is, to determine for what length of time such a bill may be kept in circulation, consistently with a contin-uing liability on the drawer. The rule adopted, as we have seen, is, it must be presented in a reasonable time under all the circumstances. But courts, not infrequently, experience great perplexity in making a distinction between a reason-able time for the presentation of such paper, and *laches* on the part of the holder. Every case differs so essentially in its facts, it has given rise to many apparently contradictory decisions, but through all of them is noticeable the efforts of the courts to ascertain whether the bill was kept in circula-tion for only a reasonable period in the regular course of business. When that fact is once established, the liability of the drawer is regarded as continuing. It will be found the decisions differ only in what the various courts deemed rea-sonable in each particular case.

In *Robinson* v. *Ames,* 20 Johns. 147, the bill declared on was drawn on the 6th of March, but not presented for payment to the drawees until the 20th of May. In the meantime the drawees had failed, but in a well reasoned opinion the court came to the conclusion there was no such *laches* as would dis-charge the drawer.

In *Jordon* v. *Wheeler,* 20 Tex. 698, the bill in suit was put in circulation and indorsed by defendants without having been presented for acceptance before it came to the hands of the plaintiff; that a little more than a month elapsed before he presented it for payment, and that was declared to be according to usage.

In *Nichols* v. *Blackmore,* 27 Tex. 586, the court was of opin-ion a delay of forty-seven or forty-eight days was not such

*laches* as would forfeit the right of the holder to recourse against the drawer in default of payment by the drawees.

Many other cases of the same import might be cited, but these are sufficient for our present purpose. They establish, beyond doubt, the fact, there is no fixed period in which the bill must be presented for payment, but that each case must be decided on its own peculiar facts in the light of commercial usage.

In the case at bar, the bill was immediately put in circulation. It was mailed to the payee on the day it bore date, to his proper address in Dacotah. Some delay occurred, attributable to interruption in the transmission of the mails, but this fact could not be imputed to the payee as *laches.* On the receipt, the payee immediately undertook and availed of the first opportunity to negotiate the bill. It was kept in circulation, and no delay was suffered other than that incident to the transaction of business in a sparsely populated territory like Dacotah. The facts and circumstances proven show no *laches* on the part of any holder that would operate to discharge the drawers.

Aside from the presumption that will be indulged, the drawers must have known the bill was liable to be put in circulation for a limited period. The evidence, though conflicting, warranted the court in finding the draft was sold with the knowledge it was to be sent to the payee in Dacotah. That being so, on every principle of justice, waiving all considerations of commercial usage, defendants ought to be held to have taken upon themselves the risk of the failure of the drawee for such reasonable time as it would take the bill to go there and be returned in the usual course of business, all things considered, and to be presented to the drawee at Chicago. We entertain no doubt, their obligation is to this extent. It would be absurd to suppose it was within the contemplation of the drawers the bill was to be sent directly to the drawee at Chicago for payment. The law imposed no such

duty upon the party procuring it.   He could rightfully send it to his creditor and be guilty of no *laches.* ·

Our statute has made the record, or a certified copy by the notary public, *prima facie* evidence of the facts therein stated, viz : of demand of payment and of refusal by the drawee. and notice of dishonor to the drawer, of "any bill of exchange, promissory note or other written instrument" by him protested.

This is an inland bill, and whether the notarial protest will be received as *prima facie* evidence of demand of payment on the drawee, and notice of dishonor to the drawer, must depend on the construction that shall be given to the statute.   At common law, in cases of inland bills of exchange, the notarial protest was not competent evidence of such facts.   *Kaskaskia Bridge Co.* v. *Shannon,* 1 Gilm. 15.   But our view is, the statute has changed the common law in this particular.   By the 10th section, it is provided, every notary public, whenever any bill of exchange, promissory note or other written instrument shall be by him protested for non-acceptance or non-payment, shall give notice thereof, in writing, to the maker and every indorser ; and, by the 13th section, his record of the protest, which he is required to keep, is made *prima facie* evidence of the facts therein stated.   Session Laws, 1872, p. 574.

Construction can not make this section of the statute plainer than it is.   It must include within its provisions all bills of exchange, whether domestic or foreign, and was, no doubt, enacted by the legislature to obviate the difficulties and inconveniences to which the collection of inland bills was subjected at common law under the decisions of the courts.   Statutes similar to ours have been enacted in other States, and this construction has been given to them in their courts of last resort.   *Kean* v. *Von Phul et al.* 7 Minn. 426 ; *Rushmore* v. *Moore,* 36 N. H. 188 ; *Simpson* v. *White,* 40 N. H. 540.

There has been no case decided in this court, construing the statute we are considering, in this particular.   The cases

cited are simply declaratory of the common law as to the effect of the protest of inland bills. The case of the *Kaskaskia Bridge Co.* v. *Shannon* was decided before the act of 1845, which is the same in substance as the present statute on this subject, was in force.

The cases of *Boyd* v. *Bragg*, 17 Ill. 69, and *McAllister* v. *Smith*, id. 328, were in relation to protests of bills of exchange in other States, and the provisions of the statute in this particular were not called in question, nor in any manner involved in the decision. It will be seen, the court did not assume to construe this clause of the statute.

The record of the notary who made the protest was properly certified. By the statute, it was made competent evidence of the facts therein stated, liable, however, to be rebutted by other competent evidence, and there was, therefore, no error in the court in admitting it.

No error appearing in the record, the judgment will be affirmed.

*Judgment affirmed.*