THE INDUSTRIAL BANK OF CHICAGO

*v.*

EDWIN J. BOWES, Jr. *et al.*

*Filed at Ottawa January 19, 1897.*

1. BILLS AND NOTES—*when an instrument is a check, and not a bill of exchange.* An architect's certificate addressed to the owner of a building, reciting that there was due the contractor a certain sum, upon which the owner endorsed an order to a firm which was advancing money for the construction of the building, to pay the contractor, is in substance a check, and not a bill of exchange.

2. SAME—*liability of drawer of bill of exchange on failure of prompt presentment and notice of dishonor.* A bill of exchange must be presented to the drawee for acceptance within a reasonable time, and if payment is refused, prompt notice thereof must be given the drawer, or he will be discharged from liability thereon.

3. SAME—*liability of drawer of check on failure of prompt presentment and notice of dishonor.* Failure to promptly present a check for payment and to give prompt notice to the drawer of its dishonor will not discharge the drawer from liability thereon unless he has suffered some loss or injury thereby, and then only in proportion to the loss sustained.

*Bowes* v. *Industrial Bank of Chicago,* 64 Ill. App. 300, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JAMES GOGGIN, Judge, presiding.

This was an action of assumpsit brought by the Industrial Bank of Chicago, against Edwin J. and John R. Bowes, on the following instrument:

"$500.                                            No. 4794.

"*To E. J. Bowes, Jr. & Bros.:*          CHICAGO, *June 17, 1892.*

"This is to certify that the Empire Building Company, contractor for the entire work of your building No.....Fulton street, is entitled to a payment of $500 by the terms of the contract.

| | | |
|---|---|---|
| Contract.................................................................... | $7850 | Remarks. |
| Extra Work.................................................................... | | |
| Deductions.................................................................... | | |
| Total .................................................................... | | |
| Previous Issues....................................................$6325 | | |
| Present Issue.................................................... | 500 | $6925 |
| Balance.................................................................... | | $925 |

WILSON & MARBLE.
BY A. H. DODD."

Endorsed on the back thereof appears the following:
"*Peabody, Houghteling & Co.:*

"Pay to the order of Empire Building Company.'
JOHN R. BOWES."

"Pay to the order of Industrial Bank.
EMPIRE BUILDING CO.,
G. C. MCARTHUR, *Treas.*"

On a trial in the Superior Court of Cook county the bank recovered a judgment for the amount named in the order, but on appeal to the Appellate Court the judgment was reversed and a judgment entered in favor of the appellees. The court also made a finding of facts, which was incorporated in the judgment, as follows:

"June 17, 1892, Bowes Bros., by indorsement on an architect's certificate, gave an order to Peabody, Houghteling & Co. to pay to the Empire Building Company the sum of $500, such paper being drawn on account of a contract of $7850 for a building of Bowes Bros. under a building loan furnished by Peabody, Houghteling & Co.;

that on said date $525 remained to be drawn on similar architect's certificates and orders; that the cashier of Peabody, Houghteling & Co. was temporarily out of the office, so payment was not made to the Empire Building Company, and the Industrial Bank bought the paper from said building company on the day of its date; that the Industrial Bank had the paper presented for payment to Peabody, Houghteling & Co. twice,—once on June 19 and in the last week in June, 1892,—and they said they were not ready to pay; that the Industrial Bank had the paper presented by Schaar (cashier) to Peabody, Houghteling & Co. about July 17, 1892, and it was not paid, and again by Schaar about fourteen days thereafter, and payment was refused because Peabody, Houghteling & Co. had paid all the money out; that about August 3, 1892, Henriques (assistant cashier) presented the paper for the bank to Peabody, Houghteling & Co., and payment was refused for lack of funds, and for the first time on August 4, 1892, Bowes Bros. were notified that payment of the paper was refused; that Peabody, Houghteling & Co. have not failed or been financially embarrassed since June 17, 1892; that after the paper sued on was issued, the fund and the amount of the contract were exhausted; that all the parties interested lived in Chicago, and Bowes Bros. were well known business men; that the Empire Building Company broke up in business before this suit was begun. It was therefore considered by the court that appellants recover from appellee their costs expended in Appellate and Superior Courts, and have execution therefor."

JONES & STRONG, for appellant.

WOOLFOLK & BROWNING, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It was conceded on the trial that John R. Bowes was authorized to sign for E. J. Bowes, Jr. & Bros., and that his signature represented the firm.

The certificate of the architect set out in the statement shows that on June 17, 1892, there was due to the Empire Building Company, the contractor, from Bowes Bros., the defendants, $500. Peabody, Houghteling & Co. had made Bowes Bros. a building loan, and the money was drawn, from time to time, on architect's certificates, as needed, to pay for the construction of a building.   On the back of the certificate of the architect issued June 17, 1892, for $500, Bowes Bros. wrote the following:

"*Peabody, Houghteling & Co.:*

"Pay to the order of the Empire Building Company.

JOHN R. BOWES."

This certificate was subsequently endorsed to the Industrial Bank by the Empire Building Company, and the bank failing to collect the money named in the certificate, brought this action against Bowes Bros. on the writing they had executed on the back of the certificate of the architect.   The bank recovered a judgment in the Superior Court for the amount claimed to be due, but in the Appellate Court the judgment was reversed on the ground that the instrument sued upon was a bill of exchange, and plaintiff could not recover for the reason it had failed to notify Bowes Bros. at once of the refusal of Peabody, Houghteling & Co. to pay upon the presentation of the order.

The law is well settled that a bill of exchange must be presented to the drawee within a reasonable time, and where payment is refused notice must be given promptly to the drawer, otherwise he cannot be held liable. (*Montelius* v. *Charles*, 76 Ill. 303; *Bickford* v. *First Nat. Bank of Chicago*, 42 id. 238; Story on Promissory Notes, sec. 492.) But was the instrument sued on strictly a bill of exchange, so that it should be governed by the rules of law applicable to such instruments?   To a bill of exchange there are three parties—drawer, drawee and payee.   The drawee is not bound until acceptance, and then, having become the acceptor, he is regarded as primarily the

promisor and as the drawer only collaterally, and the
drawer is therefore liable in very much the same way as
the endorser of a note. (1 Parsons on Contracts, 250.)
In Story on Promissory Notes, (sec. 4,) in pointing out
the distinction between bills of exchange and promissory
notes, the author says: "In a bill of exchange there are
ordinarily three original parties,—the drawer, the payee
and the drawee, who, after acceptance, becomes the ac-
ceptor. In a bill of exchange the acceptor is the primary
debtor, in the contemplation of law, to the payee, and
the drawer is but collaterally liable." The author also
says: "The indorser of a note stands in the same relation
to the subsequent parties as the drawer of a bill, and the
maker of the note is under the same liabilities as the ac-
ceptor of a bill." In the forms of bills of exchange given
by Chitty in his work on Bills it will be found the time
of payment is always specified, and on page 170, while
the author admits that the omission to state the time of
payment would not render the bill invalid, he says: "It
is advisable in all cases to express the time of payment
as clearly and intelligently as possible, and it is there-
fore usual to write it in in words."

As a general rule it is understood that a bill of ex-
change will be accepted by the drawee, hence it is drawn
payable on sight, or in thirty, sixty or ninety days, and
when presented to the drawee it is accepted, and from
that time he becomes bound to pay. The instrument in
question contains no time of payment, nor is there any-
thing to indicate, from the reading thereof, that it was
ever intended to be accepted by the drawee, as is usually
the case with a bill of exchange. While it has some of
the characteristics of a bill of exchange, we do not re-
gard it as such. On the other hand, it has all the ele-
ments of a check, and we think it clearly falls within the
definition given in the text books of a check. In 2 Dan-
iel on Negotiable Instruments (528) the author says: "A
check is a draft or order upon a bank or banking house,

purporting to be drawn upon a deposit of funds, for the payment, at all events, of a certain sum of money to a person or his order, or to bearer, and payable instantly on demand." In 2 Parsons on Notes and Bills the author says (p. 57): "A check is a brief draft or order upon a bank or banking house, directing it to pay a certain sum of money." These definitions of a check were quoted and approved by this court in *Ridgely Bank* v. *Patton*, 109 Ill. 479. Here, Peabody, Houghteling & Co. was not a regular bank, but the firm was the banker of Bowes Bros. and was so treated and recognized, and, so far as the check in question is concerned, the firm will be regarded as a bank. The instrument in question was, then, a draft or order upon a banking house directing it to pay a certain sum of money, and, as declared by Parsons, a check; or it was a draft or order upon a banking house, purporting to be drawn upon a deposit of funds, for the payment, at all events, of a certain sum of money to a person or order, and payable instantly on demand,—which Daniel declares to be a check. Under either definition the instrument in question was a check.

The instrument being a check, did the Industrial Bank lose its right to recover from the drawers of the check, for the reason the bank failed to present it for payment within proper time, and failed to give notice to the drawer of the refusal of Peabody, Houghteling & Co. to make payment? The general rule is, that the holder, in order to charge the drawer in case of dishonor, is bound to present the check for payment within a reasonable time and give notice to the drawer within a like reasonable time, otherwise the delay will be at his own peril. Story on Promissory Notes (sec. 493) lays down the rule, that if the payee or holder of the check receives it from the drawer in the same town or city where it is payable, he is bound to present it for payment on the next succeeding day after it is received; but where he receives the check from the drawer in a place distant

from the place of payment, it will be sufficient for him to forward it by the post to some person at the latter place on the next day after it is received, and the person to whom it is sent will not be required to present it for payment until the next day after it has reached him in the regular course of mail. But the rule just spoken of only applies where, in the intermediate time between the drawing of the check and presentment, there has been a change of circumstances affecting the interests of the drawer in respect to the banker upon whom the check was drawn. Where there has been a change the rule is applied strictly. But Story (sec. 497) says: "The drawer is in no case discharged from his responsibility to pay the same unless he has suffered some loss or injury by the omission or neglect to make such presentment, and then only *pro tanto.* If the bank has failed or become bankrupt, he will be discharged to the extent of the loss he has sustained thereby." This court has laid down the same rule. Thus, in *Heartt* v. *Rhodes,* 66 Ill. 351, it is said (p. 354): "The want of due presentment or notice of the dishonor of a check does not discharge the drawer un- less he has suffered some loss or injury thereby. This is one point of difference between a check and a bill of ex- change." And in *Stevens* v. *Park,* 73 Ill. 387, it was held that by failing to give notice to the drawer of a check of its non-payment within a reasonable time, the holder assumes the burden of showing that no damage has ac- crued to the drawer. In speaking further on this sub- ject, Story (sec. 498) says: "If the bank or banker still remains in good credit and is able to pay the check, the drawer will still remain liable to pay the same, notwith- standing many months may have elapsed since the date of the check, and before the presentment for payment and notice of the dishonor. So if the drawer, at the date of the check or at the time of the presentment of it for payment, had no funds in the bank or banker's hands, or if, after drawing the check and before its presentment for

payment and dishonor, he had withdrawn his funds, the drawer would remain liable to pay the check notwithstanding the lapse of time."

Under the law as laid down in the authorities cited, it is plain the drawers of the check, Bowes Bros., are liable for the amount thereof. From the facts as found by the Appellate Court it appears the check was presented to the bankers upon whom it was drawn on the date it was issued, and again on the next business day thereafter, and again a week later, which was the last of June, 1892. It was again presented July 17, and also two weeks after that date, when payment was refused because the bankers, Peabody, Houghteling & Co., had paid all the money out belonging to the drawers of the check. From the facts as found there was no improper delay in presenting the check for payment. The drawers of the check were not notified until August 4, 1892, that payment was refused, but the delay will not bar a recovery here. The bankers upon whom the check was drawn did not fail nor were they financially embarrassed. The drawers, therefore, sustained no loss which could defeat a recovery. Indeed, the fund in the hands of Peabody, Houghteling & Co., placed there by the drawers of the check for its payment, was drawn out in subsequent checks which they issued to other parties. The drawers themselves were thus guilty of a manifest wrong in withdrawing the funds which they had placed in the hands of the banker for the purpose of paying the check in question, and it would now be an act of great injustice to allow them to defeat judgment on the check, as their wrongful act prevented payment by the bankers on whom it was drawn.

Under the facts as found by the Appellate Court we are of opinion the bank was entitled to judgment. The judgment of the Appellate Court will therefore be reversed and the judgment of the Superior Court of Cook county will be affirmed.                *Judgment reversed.*