|94 137
|113 17

### George M. Bright, Doing Business as Washington Hardware Co., v. William Kenefick.

1. WRITTEN INSTRUMENTS—*Not to be Contradicted by Parol Evidence.*—A written instrument can not be contradicted by evidence of a parol agreement tending to show that the parties intended a different contract than that implied by the law from their acts.

2. BILLS OF EXCHANGE—*When the Drawer Can Not Contradict His Act by Parol Evidence.*—A person who draws a bill of exchange assumes the legal obligations incident to his act, and he can not be allowed afterward to contradict it by parol evidence and say there was a verbal agreement made at the same time to the effect that he should not be so bound.

Assumpsit, on a bill of exchange. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Reversed and remanded. Opinion filed March 12, 1901.

EDGAR BRONSON TOLMAN, attorney for appellant.

GOODRICH, VINCENT & BRADLEY, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellant sues to recover upon a bill of exchange as follows:

" $1,041.30.                    ABINGDON, VA., May 7, 1891.
    Thirty days after date pay to the order of the Washington Hardware Company one thousand and forty-one dollars, 30-100 dollars. Value received and charge the same to account of                    WILLIAM KENEFICK.
To Abingdon Coal & I. R. R. Co.,
                    Abingdon, Va."

Across the face of the instrument is the indorsement, "Accepted. Abingdon Coal & Iron R. R. Co., by Geo. E. Penn, Treas." There is an indorsement also of a credit of $191.19 made January 4, 1892.

Appellee's defense to the suit is based upon the contention that appellant took the draft in absolute payment of the debt due from appellee, and in discharge of all further liability; that relying on the alleged agreement between the parties to that effect, appellee had, with the assent of appellant, settled a suit against the drawee allowing the latter a credit for the amount of the draft. It is claimed, therefore, that appellant is estopped from insisting upon payment from appellee, and that the latter is relieved from all liability, not only for the original account, but upon the draft, now that the Abingdon Coal & Iron R. R. Co., the drawee, has, it is said, become insolvent.

Whether appellant took the draft with an agreement that it was received in full payment and discharge of the open account is a question of fact. The evidence relied upon by appellee as proving the alleged fact is to the effect that appellant suggested to one Dewar, who was appellee's agent, duly authorized and acting in his behalf, that if said agent would give appellant the note of the railroad company, which was indebted to appellee, he (appellant) would accept it in payment of his account against appellee; that Penn, the treasurer of the railroad company, happened to pass at the time; that he was called in, and appellant said that appellee owed him (appellant), and that it was desired to so arrange, that if the company could not pay the amount of appellee's debt to appellant in cash, he (appellant) could still have something which he might get discounted at the bank. The draft was then and there made out, and was duly signed and accepted.

It will be noticed that according to this testimony the draft was to be taken in settlement of the account. If this be deemed the actual verbal agreement, it would not absolve appellee from the ordinary liability of the drawer of such a bill of exchange, any more than he would have been

released from liability as an indorser had he turned over to appellant a note of the railroad company made payable to appellee's order and by him indorsed.

But appellant denies that he agreed to receive the draft even in settlement of the open account. The latter's version is that appellee's said agent came to him and asked him if he would accept the draft in payment of the account; that it would be a "lever to prize the treasurer" of the railroad company, and would aid him (appellee's agent) very materially in settling through the company; that appellant told said agent that if the draft was paid at maturity he would credit appellee accordingly, and if not, he "would charge it back to Kenefick and expect him to settle it;" that he did not discount or sell the draft to the bank, and never received any money or credit on it, but merely placed it there for collection. He states that after maturity and dishonor of the draft the bank notified him, and also notified Penn, the treasurer of the railroad company, and likewise appellee through his said agent. He also testifies that the next morning he met said agent, told him the draft was not paid, and the latter then promised to make arrangements to settle it. He states that he had frequent talks with appellee's said agent, who seems to have represented appellee in the whole matter, and who told him (appellant) he was endeavoring to collect the money from the company to pay the draft; and he swears positively that he never agreed to look to the railroad company alone for payment, and took the draft merely as an accommodation to appellee and his said agent.

There is thus conflict of testimony as to whether or not appellant verbally agreed to receive the accepted draft in payment of the original debt of appellee and release the latter. No sufficient reason appears why he should have done so. Even if he had wished to discount the draft at the bank, there would have been no necessity of agreeing to release appellee from any liability, in case it was not duly paid.

But whatever may be the force and effect of the evidence

as to the open account, there is no satisfactory or competent evidence that at the time the draft was drawn and turned over to appellant he agreed to accept it in full satisfaction and discharge, not only of the pre-existing debt, but also of appellee's legal liability as the maker or drawer of the draft. The evidence in behalf of appellee on this point is mainly that already referred to, with reference to an alleged verbal agreement between the parties. Assuming that evidence of such verbal agreement could be deemed competent, appellant's denial is corroborated by other undisputed facts. Appellee subsequently sued the Abingdon Coal and Iron Railroad Company to recover what he claimed said company owed him. In the copy of the account sued on which was filed with appellee's declaration in that suit in the Circuit Court of Washington County, Va., the draft now in controversy appears credited to the company on one side and charged back again among the "discounts and unpaid notes" on the other; and a balance is struck showing the amount of said draft as still due and unpaid to appellee from the railroad company. To rebut this record evidence that appellee still treated the railroad company as liable to him and himself as liable to appellant for the amount of the draft after its dishonor, his said agent testifies that the railroad company objected to confessing judgment in favor of appellee in that suit for the amount of this draft because it was still outstanding and the company was liable on its acceptance; that thereupon the treasurer, Penn, and appellee's said agent, saw appellant, and the latter "agreed to let it go" upon condition that Penn would pay it soon; and that thereupon he (appellee) agreed to accept a judgment, which was confessed by the railroad company, for a less amount than claimed in his account sued on, and that the amount of the draft was withdrawn from the suit "with the consent of Mr. Bright."

The difficulty with this explanation is that it does not explain. If appellee chose to take judgment by confession for less than was conceded to be due him instead of paying and taking up the draft, it was his own choice. What

Bright v. Kenefick.

difference could it make whether appellant consented or not? The important fact is that appellee did not then understand that appellant had released him from his obligation upon the draft, at least. He included it in his suit against the railroad company as still due him, as an obligation for payment of which he (appellee) was still liable. If appellant had originally accepted the draft in absolute payment of appellee's debt and in discharge of all liability thereunder, appellee and his agent knew the fact when they began that suit as well as they ever did. Why, then, did appellee charge himself in court with a liability which he believed did not exist, if such was the fact? There could be no possible reason for a man's deliberately charging himself in a suit at law with an obligation from which he regarded himself as having been formally released some months before.

But it appears further from this record that the amount of this draft was not withdrawn, as appellee's agent, Dewar, says it was, from that suit in the Virginia court. Judgment was confessed for the amount the railroad company admitted to be due, but the clerk of that court certifies that "as to the residue of the claim in said action the Abingdon Coal and Iron Railroad Company pleaded non-assumpsit, and William Kenefick took issue upon said plea and the action was continued as to the balance of said claim," and is still pending. We are of opinion that upon the question of fact, the evidence relating to such verbal agreement, assuming that it was competent, overwhelmingly preponderates in favor of appellant.

But the alleged verbal agreement to release appellee from all liability on the draft said to have been made when the draft was drawn was not competent evidence. The written instrument can not thus be contradicted by evidence of a parol agreement, tending to show that the parties intended a different contract than that implied by the law from their acts. Haines v. Nance, 52 Ill. App. 406; Johnson v. Glover, 121 Ill. 283 (286). In the case of Courtney v. Hogan, 93 Ill. 101, this point is expressly decided, and the reason is given in language quoted from Mason v. Burton, 54 Ill. 349:

"His assignment of the notes meant that in certain contingencies defined by the statute he would pay the notes, and it meant this as fully as if this agreement had been written out in words. This was the legal effect of the assignment, and it can not be impaired by proof of a different parol agreement."

In that case the trial court had refused to allow the appellant to prove a verbal agreement made at the time of the indorsement to the effect that he should not be responsible as an indorser. The drawer of a bill of exchange is in very much the same position as to liability as an indorser of a promissory note. Industrial Bank v. Bowes, 165 Ill. 70 (74). The appellee, when he drew this draft, thereby assumed the legal obligations incident thereto, and he can not be allowed now to contradict, by parol, his said agreement in writing, and say that there was a verbal agreement made at the same time to the effect that he should not be so bound. Kingsland v. Koeppe, 137 Ill. 344 (346). It is not a question in this case what liability appellee assumed by drawing this draft, as in the case where a third party, not the payee, places his name on the back of a note. Here appellee seeks to disclaim all liability of every nature and kind by virtue of a verbal agreement in conflict with his written obligation.

The testimony of appellant that notice was promptly given to appellee of the non-payment of the draft at maturity, corroborated as it is by other evidence, is not satisfactorily rebutted by the testimony of appellee's agent. The latter says he was in another State at the time. Appellant testifies that the bank which held the draft for collection sent notices to the drawer as well as the payee and acceptor. That appellee or his agent did know of its dishonor, and did not consider appellee released from liability for want of notice in apt time, is evident from his conduct, before alluded to. Appellee has not suffered loss or injury because of delay in the notice, if any there was. The railroad company was not insolvent when he brought suit against it, and appellee was subsequently paid what the railroad company had admitted to be due him. We think

appellee is estopped by his own admission in that suit from now denying liability on the ground of alleged want of prompt notice.

In view of what has been said we do not deem it necessary to consider at length the objections urged to the instructions. We regard some of them as inapplicable to the case presented by such evidence as was competent.

For the reasons indicated we think it was error to refuse to instruct the jury to find for appellant. The judgment of the Circuit Court must be reversed and the cause remanded.