## Sotir Simonoff for use of Illio Simonoff, Plaintiff in Error, v. Granite City National Bank, Defendant in Error.

1. BILLS AND NOTES—*what is effect of Negotiable Instruments Act on questions of acceptance and payment.* The law as codified in the Negotiable Instruments Act, sec. 61, in 1907 (J. & A. ¶ 7700), governing the questions of acceptance and payment of bills of exchange, is practically the same as was the law in this State prior to that codification.

2. BILLS AND NOTES, § 7*—*when instrument is foreign bill of exchange.* Whether or not an instrument is a bill of exchange, so called, or a check depends on its character rather than what it may be designated on its face, and where an instrument was drawn by a domestic bank upon a bank in France, for payment by the latter bank of a certain sum to a certain payee named therein, *held* that such instrument was a foreign bill of exchange.

3. BILLS AND NOTES, § 271*—*necessity of presentment for pay-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*ment to drawee to charge drawer.* Whether an instrument be a bill of exchange or a check, under the Negotiable Instruments Act, sec. 185 (J. & A. ¶ 7825), such instrument must be presented for payment to the drawee thereon before the payee can recover against the drawer thereof, or he must show some valid reason why he did not present such instrument and that his failure to present same has caused no damage to the drawer.

4. BILLS AND NOTES, § 271*—*what is not available as defense for failure to present foreign bill for payment.* The fact that the country to which the payee of a bill of exchange belongs was in war and that the payee was drafted in the army is not a sufficient reason for failure of said payee to present such bill of exchange to the drawee thereon for payment, as provided by the Negotiable Instruments Act (J. & A. ¶ 7640 *et seq.*), to enable such payee to recover against the drawer of such bill of exchange.

5. ASSUMPSIT, ACTION OF, § 72*—*when special count necessary.* Recovery by the payee of a bill of exchange against the drawer thereof upon the theory that it was not necessary for such payee to present such bill of exchange to the drawee thereon for payment can only be had under a special count alleging the reasons for failure to present such bill of exchange to such drawee, as under the common counts evidence on this theory would not be proper.

6. APPEAL AND ERROR, § 1455*—*when improper sustaining of demurrer to special count is harmless error.* Where a special count filed by the payee of a bill of exchange against the drawer thereof alleged that it was known to said drawer that said payee had failed to present said bill of exchange to the drawee thereon for payment, and that so knowing said drawer promised said payee to pay him the amount of said bill of exchange, *held* that no injury was caused such payee by the ruling of the court sustaining a demurrer to said count for the reason that the evidence wholly failed to support the allegations of said count.

7. BILLS AND NOTES, § 271*—*when bank may not be compelled to take up bill of exchange issued by it.* The law does not compel a bank to take up a bill of exchange issued by it except on the terms provided by the statute, and where said terms were not complied with and no sufficient reason was shown for failing to comply therewith, such bank should not be compelled to take up such bill of exchange at a depreciated value and thereby suffer a loss.

Error to the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the March term, 1916. Reversed. Opinion filed November 13, 1916.

*See Illinois *Notes Digest,* Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

M. R. SULLIVAN and MORGAN LE MASTERS, for plaintiff in error.

EDWARD J. VAUGHN, for defendant in error.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action in assumpsit was brought by plaintiff in error for the use of Illio Simonoff, his brother, against the Granite City National Bank, defendant in error, at the October term, 1915, of the Circuit Court of Madison county, to recover the value of 7,700 francs according to the rate of exchange on July 18, 1914.

The declaration as originally filed consisted of the common counts and a special count, which special count was afterwards withdrawn by plaintiff in error. Thereafter on the trial of said cause had by the court, the jury being waived, a special count was filed by leave of court. A demurrer was sustained to said special count, thereby leaving only the common counts, to which there had been filed the plea of the general issue.

The court found the issues in favor of plaintiff in error, and rendered judgment against defendant in error for $1,378.30, from said judgment plaintiff in error prosecutes this writ of error, cross errors being also assigned by defendant in error.

On May 16, 1914, the Simonoffs purchased at defendant in error's bank at Granite City, Illinois, three checks or bills of exchange on Paris, for 4,000, 2,000 and 1,700 francs respectively, making a total of 7,700 francs. Illio Simonoff, the beneficial plaintiff, paid for these three bills of exchange $1,507.22, and on his direction said bills of exchange were made payable to Sotir Simonoff, who was about to depart for his home country in Macedonia.

The evidence further discloses that on the arrival of plaintiff in error in Macedonia he was drafted into the

military service of his country, and thereafter gave said bills of exchange to one Theodore Illoff, who was about to leave that country for Granite City, Illinois, with directions to deliver the same to Illio Simonoff, the beneficial plaintiff. The checks were delivered by Illoff to the beneficial plaintiff about July 14, 1914. Said bills of exchange had never been indorsed by plaintiff in error and had never by him or any one else been presented to the bank at Paris, on which said bills of exchange were drawn, for payment.

The record further discloses that when said bills of exchange were purchased, defendant in error's bank advised its New York correspondent, the Hoover National Bank, of the issue of said bills of exchange, with direction to said bank to protect the same with the drawee bank in Paris, and credit was given by the defendant in error to the Hoover National Bank for the amount received for said bills of exchange, less some $12 charged for issuing the same.

The record also discloses that on July 18, 1914, being some two or three days after said bills of exchange were delivered to the beneficial plaintiff by the witness Illoff, he, said beneficial plaintiff, applied to defendant in error bank to have returned to him the money which he had paid therefor. This the defendant in error did not do. The evidence is conflicting as to just what transpired between the beneficial plaintiff and the officers of the defendant in error bank. The fair preponderance of the evidence tends to prove that the beneficial plaintiff was insisting on defendant in error taking up said bills of exchange and returning to him the full amount he had paid when said bills of exchange were purchased.

Requests for a return of the money paid by him for said bills of exchange were made by the beneficial plaintiff from time to time, covering a period of from July, 1914, to September, 1915. The beneficial plain-

tiff testified that on one occasion in the year 1914 he applied to defendant in error for a return of the money which he had paid for the bills of exchange, and that he was told by one of the officers of the bank that he should come back in six or seven months and get his money, and on another occasion that they would have to write to New York and that when the officers of the bank could hear from New York they would return him his money. Plaintiff in error is corroborated to some extent by witnesses who accompanied him, as to these conversations. On the other hand, the officers of the bank testified that they never agreed to return to the beneficial plaintiff the money which he had paid for said bills of exchange, but that they agreed to take the same up at their then valuation, but that the beneficial plaintiff was not willing to dispose of them on that basis.

The evidence further discloses that on account of the European war, Paris exchange dropped several points, and that at the time of the trial the 7,700 francs for which $1,507.22 had been paid were worth only $1,378.30, the amount for which the trial court gave judgment.

The principal ground relied on by plaintiff in error for a reversal of the judgment in this case is that the trial court erred in not rendering judgment in his favor for the value of the three bills of exchange computed at the rate of exchange on July 18, 1914, with interest thereon from that date to the date of the trial, instead of rendering judgment for the value of said bills of exchange on the date of the trial, as was done by the trial court. On the part of defendant in error, it is urged that the court erred in rendering judgment against it.

We will take up the proposition made by defendant in error first, for if it is right in its contention, on the pleas as they now stand, plaintiff in error must show

his right of recovery on the common counts, as both of the special counts are out of the case, the first being voluntarily withdrawn and a demurrer having been sustained to the second. It is necessary, therefore, to determine the rights of the legal plaintiff, the payee, in said bills of exchange against defendant in error, the drawer thereof.

Under the provisions of section 61 of the Negotiable Instruments Act (J. & A. ¶ 7700), the defendant in error, as the drawer of the bills of exchange in question, undertakes that said bills of exchange will be accepted and paid by the drawee bank in Paris, and if not so accepted and paid and the necessary proceedings of dishonor be taken, defendant in error as the drawer of the said bills of exchange will be compelled to pay the amount thereof to plaintiff in error, the payee thereof.

No contention is made by plaintiff in error that he has complied with the provisions of said statute. It is, however, insisted by him that this is not necessary, and that he has a right, notwithstanding the provision of the statute, to demand and enforce payment against defendant in error without having presented said bills of exchange for payment as provided by statute. The law as codified governing this question is practically the same as was the law in this State prior to the codification, made in 1907. *Montelius v. Charles,* 76 Ill. 303; *Industrial Bank of Chicago v. Bowes,* 165 Ill. 70.

In *Montelius v. Charles, supra,* at page 306, the court says: "The law is settled, by an unbroken line of decisions, that all drafts, whether foreign or inland bills, must be presented to the drawee within a reasonable time, and in case of nonpayment, notice must be given promptly to the drawer, to charge him." In *Industrial Bank of Chicago v. Bowes, supra,* at page 75, the court says: "The general rule is, that the holder, in order to charge the drawer in case of dishonor, is

bound to present the check for payment within a reasonable time, and give notice to the drawer within a like reasonable time, otherwise the delay will be at his own peril.''

A distinction is sought to be drawn by plaintiff in error between bills of exchange and checks, and in some parts of his argument he seems to contend that the instruments in question were checks rather than foreign bills of exchange. Whether or not an instrument is a bill of exchange, so called, or a check, depends on its character rather than on what it may be designated on its face. In our opinion the instruments in question are unquestionably foreign bills of exchange.

If, however, it should be conceded that plaintiff in error is correct in his conclusion that the instruments in question are checks instead of bills of exchange, it would not affect the rights of the parties on the record in this case.

Section 185 of the Negotiable Instruments Act (J. & A. ¶ 7825) provides: ''A check must be presented for payment within a reasonable time after issuance, and notice of dishonor given to the drawer as provided for in bills of exchange or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay.'' So, on the theory of plaintiff in error that the instruments in question were checks, rather than bills of exchange, he would still under the law be required to present the instruments for payment to the drawee thereon before he can recover against the drawer of such checks, or he must show some valid reason why he did not present said checks, and that his failure to present the same has caused no damage to the drawer.

This proof has not been made. The only reason assigned by plaintiff in error as to why he did not present said bills of exchange to the drawee for payment

is that his country was in war and he was drafted in the army. This, however, is not a sufficient reason under the evidence in this case for the failure of plaintiff in error to present said instruments for payment as provided by statute. Then, too, for plaintiff in error to recover on the theory that it was not necessary for him to present said bills of exchange to the drawee for payment, he must do so under a special count, alleging the reasons for such failure, as under the common counts evidence on this theory would not be proper.

It is next contended by plaintiff in error that the court erred in sustaining a demurrer to the special count filed by him by leave of court on the trial of said cause. Said special count alleges that it was known to defendant in error that plaintiff in error had failed to present said bills of exchange for payment in Paris, and that knowing the same, defendant in error promised plaintiff in error to pay him the amount of said checks. No injury was caused plaintiff in error by the ruling of the court on the demurrer in question for the reason that the evidence in the case, we think, wholly fails to support the allegations of said special count of said declaration. The beneficial plaintiff testified that on July 18, 1914, when he received the bills of exchange from Theodore Illoff, who brought them to him from his brother Sotir Simonoff, that he went to defendant in error's bank and requested a return of his money, and that the witness Meditch, who was in charge of the foreign exchange department of the defendant's bank, said to him to come back in six or seven months and get his money. The beneficial plaintiff testified that the next time he called at defendant's bank he took with him the witness George Gliroff, this being some seven or eight days subsequent to the visit he made on July 18, 1914, and that at that time the witness Meditch said to him that they were willing to pay after the time

has come. "The time has not come yet, when the time comes, come get your money." According to the testimony the beneficial plaintiff did not return to the bank after that time until the spring or summer of 1915.

Referring now to the testimony of George Gliroff, who the beneficial plaintiff testified accompanied him to defendant in error's bank the second time he went there after he received the bills of exchange from Theodore Illoff. This witness testified that the beneficial plaintiff gave the checks to some clerk and talked with the witness Meditch; that Meditch, referred to by this witness as "Jim," said for Illio Simonoff, the beneficial plaintiff, "to wait a couple of days, come back after a couple of days and get your money. Jim told Louis to come back after a few days to get his money, and I then left Louis." According, therefore, to the testimony of Gliroff, who acted as interpreter for the beneficial plaintiff, the witness Meditch, who was in charge of the foreign exchange of defendant in error's bank, said to plaintiff in error that if he would come back in two days, or a few days, he could get his money. This testimony is corroborative of the testimony of the witness Meditch, who stated: "I told him (referring to the beneficial plaintiff) we might redeem them (the bills of exchange) as an accommodation to him, not that we were legally obligated to, but he must wait two days. I must get the rate cards from New York, we had no cards."

The record further discloses that after this conversation the beneficial plaintiff did not apply again to the defendant in error or its officers to take up the bills of exchange in question. We are therefore conclusively drawn to the conclusion that at no time did the defendant in error or its officers agree to pay plaintiff in error or the beneficial plaintiff the amount paid for said bills of exchange, or to do other than to take them

up at the current rate of exchange. This conclusion is in keeping with the ordinary rules of banking and the commercial world. No bank with safety could undertake to sell foreign exchange at the current rate on the day the sale was made and thereafter be compelled to take up said bills of exchange, should the holder thereof conclude not to present the same for payment, at the same rate sold at, without reference to whether or not said rate of exchange had fluctuated. The law, however, does not compel a bank to take up a bill of exchange issued by it except on the terms provided by the statute, that is, where the bill of exchange has been presented for payment, payment has been refused, and notice of dishonor has been given as provided by law. Plaintiff in error has not brought himself within this rule. Plaintiff in error as the holder and payee of said bills of exchange, so far as the record discloses, may at any time present the same for payment at the drawee bank in Paris, where it will be paid according to its terms, or he can dispose of the same in the commercial market at the current rates of exchange. There is no good reason either in law or good conscience why defendant in error should be compelled to take up said bills of exchange at their depreciated value and thereby suffer a loss as it would have to do if so required.

The judgment of the trial court will be reversed, and as our holding is that no recovery can be had in this action, the cause will not be remanded.

*Judgment reversed.*