George C. Johannsen, Defendant in Error, v. David J. Evans, Plaintiff in Error.

Gen. No. 36,424.

Opinion filed June 30, 1933.

WILLIAM J. McGAH, for plaintiff in error.

FRANK O. HILBURN, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

By this writ of error defendant seeks to reverse a judgment rendered against him for $266.50, on April

21, 1932, in a 4th class action in contract, commenced on February 25, 1932, and tried without a jury on stipulated facts. The court found the issues against defendant and assessed plaintiff's damages at the full amount of his claim.

Plaintiff, a dealer in poultry and veal in Chicago, claimed a balance of $266.50 due him on June 1, 1931, for certain merchandise sold and delivered to defendant, also in Chicago. On the copy of the account attached to plaintiff's statement of claim, it is stated that on June 5, 1931, he received defendant's check for $266.50, which he deposited, but that thereafter the check was returned to him, unpaid, because "bank closed."

In defendant's affidavit of merits he admitted the sale and delivery of the merchandise, but he alleged as a defense to plaintiff's claim that on June 3, 1931, he gave plaintiff a check for $266.50, signed by A. M. Evans and drawn on the West Englewood Trust and Savings Bank in Chicago, in full payment of the amount due; that on that day and thereafter A. M. Evans had money on deposit with the bank more than sufficient to pay the check; that plaintiff "negligently" failed to present the check until June 9, 1931, on which day the bank was closed by order of the auditor of public accounts of Illinois; that because of plaintiff's negligence, the check was not paid by the bank; that, "therefore, defendant is not indebted to plaintiff in the sum of $266.50, or in any sum."

The material parts of the stipulated facts, contained in the bill of exceptions, are as follows:

That the check in question, drawn on the West Englewood bank and dated June 3, "was not received by plaintiff until Friday, June 5, 1931"; that "on said date (June 5) defendant had enough money on deposit in the West Englewood bank to pay the check"; that "on Saturday, June 6, 1931, plaintiff deposited the

check to the credit of his account in the Bowmansville National Bank, which was not a member of the clearing house''; that ''in accordance with the *custom* of said bank (Bowmansville bank), the check having been deposited on a Saturday, said check was credited as a deposit of June 8, the next business day, which was Monday, and on that date was sent to the National Bank of the Republic, through which bank the Bowmansville bank cleared checks deposited with it''; that ''on June 9, 1931, the West Englewood bank was closed by order of the auditor of public accounts''; and that ''on June 9, the check was presented by the National Bank of the Republic for payment and, said West Englewood bank being closed, the check was never paid.''

It appears from the bill of exceptions that the parties by their respective attorneys, further stipulated as follows:

''The sole question in this cause is a question of law to be determined by the court, viz.: 'Did plaintiff make presentment of said check for payment within a *reasonable* time, as provided in Section 185, Article 1, Chapter 98, of the Illinois Negotiable Instruments Act?' ''

It also appears from the bill of exceptions that ''said question was submitted to the court for decision and the court entered a finding for the plaintiff''; and that after denying defendant's motions for a new trial and in arrest of judgment, the court entered the judgment as first above mentioned.

In section 185 of the Illinois Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 207, it is provided:

''A check must be presented for payment within a reasonable time after its issue, and notice of dishonor given to the drawer as provided for in the case of bills of exchange, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay.''

In section 192 of the act, Cahill's St. ch. 98, ¶ 215, it is provided:

"In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case."

Prior to the passage of said act in June, 1907, there were decisions in this State in substantial accord with the provisions of said sections. In *Montelius v. Charles,* 76 Ill. 303, 306, decided in 1875, it is said: "The law is settled, by an unbroken line of decisions, that all drafts, whether foreign or inland bills, must be presented to the drawee within a reasonable time, and in case of non-payment, notice must be given promptly to the drawer, to charge him. But what is a reasonable time, under all the circumstances, is sometimes a most difficult question. The general doctrine is, each case must depend on its own peculiar facts and be judged accordingly." In *Industrial Bank v. Bowes,* 165 Ill. 70, 75, 76, decided in 1897, it is said:

"The general rule is, that the holder, in order to charge the drawer in case of dishonor, is bound to present the check for payment within a reasonable time and give notice to the drawer within a like reasonable time, otherwise the delay will be at his own peril. Story on Promissory Notes (sec. 493) lays down the rule, that if the payee or holder of the check receives it from the drawer in the same town or city where it is payable, he is bound to present it for payment on the next succeeding day after it is received; but where he receives the check from the drawer in a place distant from the place of payment, it will be sufficient for him to forward it by the post to some person at the latter place on the next day after it is received, and the person to whom it is sent will not be required to present it for payment until the next day after it has

reached him in the regular course of mail. . . . But Story (sec. 497) says: 'The drawer is in no case discharged from his responsibility to pay the same unless he has suffered some loss or injury by the omission or neglect to make such presentment, and then only *pro tanto*. If the bank has failed or become bankrupt, he will be discharged to the extent of the loss he has sus-. tained thereby.' This court has laid down the same rule. . . . In speaking further on this subject Story (sec. 498) says: 'If the bank or banker still remains in good credit and is able to pay the check, the drawer will still remain liable to pay the same, notwithstanding many months may have elapsed since the date of the check, and before the presentment for payment and notice of the dishonor. So if the drawer, at the date of the check or at the time of the presentment of it for payment, had no funds in the bank or banker's hands, or if, after drawing the check and before its presentment for payment and dishonor, he had withdrawn his funds, the drawer would remain liable to pay the check notwithstanding the lapse of time.' ''

In *Travers v. T. M. Sinclair & Co.*, 122 Ill. App. 203, decided by the Appellate Court for the second district in 1905, it was held that under the particular facts a delay of five days in presenting a check for payment was sufficient to discharge an *indorser* of liability. The court said (p. 207, italics ours):

''As to what is a reasonable time for presentment of an indorsed check and notice of dishonor in order to hold the indorser depends to some extent upon circumstances and the conditions existing. If a check is received in the same town as the bank on which it is drawn is located, the law is that it must be presented either on the same day or not later than the next. If the check is received in one place, drawn on a bank at some other place, then it must be *forwarded* not later than the day after it is received, for the present-

ment to the bank on which it is drawn, and this *appears to mean* that it must be forwarded *directly.* Forwarding by a *circuitous* route may, as a general rule, be said to constitute negligence. See 5 Am. & Eng. Ency. of Law, (2nd ed.), pages 1042 and 1043, and cases cited.''

Turning to said 5 Am. & Eng. Ency. of Law (published in 1897) we find the following statements (italics ours):

(Page 1041) ''When no more time is taken than is *fairly required* in the *usual course of business,* special inconvenience and special circumstances considered, the holder, in case of failure of the bank upon which the check is drawn, before presentation, should not be held to suffer the loss.'' (Citing *Freiberg v. Cody,* 55 Mich. 108.)

(Page 1042) ''It is well settled that when the person receiving the check and the banker on whom it is drawn are in the same place, in the absence of special circumstances, it must be presented for payment the same day or at least the day after it is received.'' (Citing many cases, including *Bickford v. First National Bank,* 42 Ill. 238.)

(Page 1042) ''But if in different places the check must be *forwarded* for presentment on the day after it is received, and the agent to whom it is forwarded must in like manner present it at the bank *on the day after he receives it.*'' (Citing many cases, including *Allen v. Kramer,* 2 Ill. App. 205, 209.)

(Page 1043) ''The check, if drawn on a distant place, however, need not be sent *direct* to its place of payment by the holder, but *the usual and accustomed channel of transmission is all that is required.*'' (Citing several cases, including *Taylor v. Sip,* 30 N. J. L. 284.)

In the cited *Taylor v. Sip* case, it is said (p. 291, italics ours):

"Nor need the check be sent *direct* to its place of payment by the holder. It may be sent by the *usual and accustomed channel of transmission.* If it belong to a bank, or be left with it for collection, and the bank does not exchange directly with the bank upon which it is drawn, it may be sent to a bank with which it does exchange, and so to its correspondent bank, until it reaches the bank at which it is payable, if the route be not unreasonably circuitous. Such is the well settled usage among banks, and it is sanctioned by law. Such is the rule in regard to the transmission of bills of exchange, and it seems equally applicable to checks. *Any other rule would be exceedingly onerous to the holders of checks.*"

In 1912, after the Illinois Negotiable Instruments Act became in force, the Appellate Court of the second district, in the case of *Sublette Exchange Bank v. Fitzgerald,* 168 Ill. App. 240, modified to some extent the rule as stated in its prior opinion in *Travers v. T. M. Sinclair & Co., supra,* and said (p. 242, italics ours):

"By requiring that the check be forwarded directly to the bank upon which it is drawn, the rule above stated (in the *Travers* case) does not mean that it should be sent in a direct line as a bird might fly, but *by the usual commercial route,* and the proof here shows that this was sent by the customary route."

In the present case, defendant's affidavit of merits discloses that his theory of defense is in substance that plaintiff "negligently" failed to present for payment defendant's check (given for the admitted indebtedness) to the bank on which it was drawn within a reasonable time; that had it sooner been presented it would have been paid; that when it was presented payment was refused because of the closing of the bank by the state auditor on the same day; and that because of plaintiff's negligence defendant is discharged from liability on the unpaid check and on the

indebtedness. The stipulated facts, on which the case was tried, disclose in substance that defendant's check, drawn on the West Englewood bank, was not received by plaintiff until June 5, 1931; that on *that* day defendant had enough money on deposit in said bank to pay the check (whether *thereafter* he had enough money is not stated); that on the *following* day, "Saturday, June 6, 1931" plaintiff deposited the check "to the credit *of his account in* the Bowmansville bank"; that the Bowmansville bank "was not a member of the clearing house"; that "in accordance with the *custom*" of the Bowmansville bank, the check (deposited on Saturday) was not credited to plaintiff as a deposit until the "next business day" which was "Monday, June 8"; that on that day (June 8) the Bowmansville bank (agent for plaintiff for the presentation for payment and collection of the check) forwarded the check to the Republic bank, "through which bank the Bowmansville bank cleared checks deposited with it"; that on the *following* day (June 9) the West Englewood bank "was closed by order of the auditor of public accounts"; that on said day (June 9) the check was presented for payment by the Republic bank; and that, "said West Englewood bank being closed, the check was never paid." It will also be noticed that it is not definitely stated that, at the time the bank was closed and at the time the check was presented for payment, defendant had sufficient moneys on deposit in the bank to pay the check.

In view of the stipulated facts, the provisions of sections 185 and 192 of the Illinois Negotiable Instruments Act, and the authorities above mentioned, we are of the opinion that the check in question was presented for payment to the West Englewood bank "within a reasonable time"; that, considering the well-known usages of trade or business with respect to checks in a large city like Chicago, neither the plaintiff

nor the Bowmansville bank (plaintiff's agent) was guilty of negligence, in fact or law, in not causing the check to be presented sooner than it was; and that the court was fully justified in making its finding and in entering the judgment appealed from. One of the contentions of counsel for defendant, here made, is, in substance, that plaintiff was remiss in choosing a bank with which to do his banking business which was not a member of the "clearing house" and which had the "custom" as mentioned in the stipulated facts. We cannot agree with the contention.

The judgment of the municipal court is affirmed.

*Affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.