Village of Lombard, Appellee, v. Andrew C. Anderson and Glens Falls Indemnity Company, Appellants.

Gen. No. 8,885.

February term, 1935. Heard in this court at the
Opinion filed May 17, 1935.

THOMAS A. MATTHEWS and PALMER, STRAWN & MITCHELL, all of Chicago, for appellants; THOMAS A. MATTHEWS, of counsel.

JOHN E. McCoy, of Lombard, for appellee; RICHARD T. TOBIN, of Chicago, of counsel.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This was an action brought by appellee to recover against a village collector and his surety for money alleged to have been collected by such collector and not turned over to appellee. The cause was heard by the trial court without a jury, upon a stipulation of facts and testimony presented. No controversy exists over the amount claimed due by appellee from the said Anderson. The questions before this court in this appeal concern three credits to which Anderson claimed he was entitled as against the amount due from him to appellee. The total claimed due by appellee was the sum of $4,072.36. The credits claimed by Anderson were for the following amounts and items: The sum of $1,238.80 was claimed as additional compensation by Anderson as collector of said village, by force and effect of the statute. This claim arose in the following manner: Anderson was appointed by the village board

as village collector. He qualified and took office in May, 1931, served for a period of one year, whereupon he was reappointed and qualified and continued to serve until August 15, 1932. The salary of the collector was fixed by the village board at $200 per month. The aggregate amount of salary as above fixed, paid to Anderson during his tenure of office, was $3,080. He claimed that by virtue of Cahill's St. ch. 53, ¶ 52 (sec. 57, ch. 53, Smith-Hurd) he was entitled to two per cent of all money collected by him. Two per cent of the amount collected by him during his tenure of office would have amounted to $4,318.80, thus making a difference in the compensation received by him and that now claimed by him of $1,238.80.

The above section referred to reads as follows: "Collectors in cities or incorporated towns, in counties of the first and second classes, shall receive such fees as may be prescribed by the common council or board of trustees of their respective cities or incorporated towns, not exceeding in any case two per cent of the amount collected by them." Appellant urges that by virtue of the above section he is entitled to receive two per cent of the total amount collected, and that any ordinance of the village board attempting to fix any other salary for the office of collector was void. Appellee contends that the above section expressly provides that collectors shall receive such compensation as may be prescribed by the common council or board of trustees of the village, so long as the same does not exceed two per cent of the amount collected. From an examination of the above section, we are not of the opinion that it is the intent thereof that the compensation to be received by a village collector shall be two per cent of the amount collected by him; but it may be any compensation fixed by the board of trustees so long as the same does not exceed two per cent. The two per cent portion of the section only serves to fix the maximum amount that may be allowed. Pars. 89 and 198, ch. 24,

Cahill's St. 1933, of the Cities and Villages Act, provides for the fixing of compensation for certain city and village officers including collectors, and therein contemplates that compensation for their services shall be fixed by the city or village board, except when the same is otherwise fixed by law. We are of the opinion that the village board not only possessed the power to fix the compensation of its collector, so long as the same did not exceed two per cent of the amount collected, but that the conduct of Anderson and his acceptance of his monthly pay without objection during his entire period of service, would estop him from claiming any additional salary at this time. The trial court denied the claim of Anderson for $1,238.80 additional compensation. We are of the opinion that the judgment of the trial court in this respect was correct.

The next credit claimed due by Anderson was the sum of $1,500, and was based upon the following state of facts: On December 17, 1931, Anderson issued and delivered to Ernest A. Logan, treasurer of the village of Lombard, a check for $1,500, drawn upon the Lombard State Bank of Lombard, Illinois. Mr. Logan was cashier of the South Lombard Trust and Savings Bank of Lombard, Illinois. Anderson delivered this check to Mr. Logan at the South Lombard Trust and Savings Bank. Logan deposited the same therein to his account as treasurer of said village. The South Lombard Trust and Savings Bank forwarded the check to the First National Bank of Chicago, which bank was the correspondent bank for the Trust and Savings Bank. The evidence shows that it was an established custom and usage of the Trust and Savings Bank to send its checks to the First National Bank of Chicago, for clearance. Before the check cleared, the Lombard State Bank upon which it was drawn, suspended business. This occurred on December 19, 1931, being the second day after the delivery of the check by Anderson to Logan.

It is urged.by appellants that the duty rested upon Logan to promptly present the check for payment to the bank upon which it was drawn, and that his attempt to clear the same through a correspondent bank in Chicago constituted such lack of diligence in the presentment thereof as to discharge Anderson from any liability thereon. It is generally held that if the bank upon which a check is drawn and the holder are in the same place, the payee has until the close of the next business day in which to present the check for payment. In the absence of special circumstances, if he fails to present the check for payment before the close of the next business day after receiving it, the drawer is discharged to the extent of loss caused by the bank's insolvency. Appellants in this connection rely upon Cahill's St. ch. 98, ¶ 207 (sec. 207, ch. 98, Smith-Hurd St. 1933). This section of the Negotiable Instruments Act reads as follows: ''A check must be presented for payment within a reasonable time after its issue, and notice of dishonor given to the drawer as provided for in the case of bills of exchange, or the drawer. will be discharged from liability thereon to the extent of the loss caused by the delay.'' Par. 215 of the same act, in defining what is a reasonable time, reads as follows: ''In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any), with respect to such instruments, and the facts of the particular case.''

The village of Lombard lies only a short distance from Chicago, which city is the financial center of that area. These two cities are situated in adjoining counties. In defining what is a reasonable time, the statute provides that regard is to be had to the nature of the instrument, the usage of the trade or business, and the facts of the particular case. It is thus apparent that it is not the intent or purpose of the statute to lay down

a hard and fixed rule as to the number of hours or days which shall constitute a reasonable time. Bank transactions today in the modern age of business are not cash transactions, but merely the shifting of credit balances by means of bookkeeping entries. This takes place by the medium of checks and other evidences of credit.

The evidence in this case shows that it was the established custom of the South Lombard Trust and Savings Bank to clear its checks in Chicago. The depositing of checks in banks to the credit of the holder thereof, and the clearing of same through the usual commercial methods, are transactions peculiar to the banking business and should be recognized and dealt with according to the established usage of that business. The vast number of checks that are received by banks daily from their customers in the ordinary course of business, and which are drawn upon other banks, necessitates some reasonable, fixed, and established custom and usage for the presentment of such checks by and through a known method or agency. The method of clearing checks through an established clearing house conveniently located to the adjacent territory has become an established custom in the banking business, and this usage of trade and business has by necessity of things become incorporated into the banking business of the country. It is apparent that if banks and commercial enterprises were required upon receipt of a check, to immediately search out the bank upon which it was drawn and there demand payment in cash, in order that the cash might be transported to the bank where the check had been deposited for credit, would result in utter confusion. There is no claim that Logan or the South Lombard Trust and Savings Bank had any knowledge or reason to believe that the drawee bank, the Lombard State, was in bad financial condition. The reason for requiring checks to be presented

for payment within a reasonable time after their issue, is that a check is not designed for circulation as a medium of exchange, and should therefore, be presented with dispatch and diligence consistent with the attending circumstances. The statute does not lay down an unbending or inflexible rule governing the time of presentment of checks in order to charge the drawer thereof with liability. The only rule is that they must be presented for payment within a reasonable time after their issue. What would be due diligence and a reasonable time under one set of facts, might be negligence under different circumstances, and we are of the opinion that all that can be definitely stated is that every case must in this particular, be decided upon its own peculiar facts.

The Negotiable Instruments Act requires that a check be presented within a reasonable time, and provides that in determining what is a reasonable time, regard shall be had to the nature of the instrument, the usage of the trade or business, and the facts of the particular case. In this case, Anderson delivered the check to Logan at the bank where Logan was cashier and where he carried his account as city treasurer. Logan deposited the check to his account as treasurer, and pursuant to the established custom of the South Lombard Trust and Savings Bank, the check was forwarded to the First National Bank of Chicago for clearance by it through the clearing house. There is no proof of any undue delay in the steps taken to clear the check. The two cities were but a few miles apart. The drawee bank suspended business on the second day after the check issued. We are of the opinion that the above facts do not constitute such negligence as to give rise to the application of said section 207 of the act, and do not of themselves give rise to a presumption of law that the loss was due to unreasonable delay in presenting the check for payment.

A like question presented under very similar facts, will be found in the case of *Johannsen v. Evans,* 271 Ill. App. 372. In that case the banks in question were both located in the City of Chicago, while in this case the bank in question is located a few miles outside the limits of Cook county. In the above cited case, the check was drawn upon the West Englewood Bank and deposited by the holder thereof to his account in the Bowmansville Bank. This bank was not a member of the clearing house, and in accordance with its established custom, it forwarded the check to its correspondent bank, the Republic Bank, in Chicago, which bank did belong to the clearing house and took care of the clearance of checks for the Bowmansville Bank. In the case now before us the South Lombard Trust and Savings Bank, not belonging to the clearing house, forwarded the check to its Chicago correspondent, which did belong to the clearing house and which cleared the checks for the country bank.

We are of the opinion that the term, ''within a reasonable time,'' means a presentment within a reasonable time having regard to the usual and customary manner of conducting the business in question and its established usage with reference to the acts done; and in the absence of evidence to establish the fact that such acts were negligent, that a reasonable interpretation should be given this provision of the act. We are of the opinion that the trial court was justified in finding for the appellee and against the appellants upon their credit claimed because of the said $1,500 check, and that the judgment of the court in this respect was correct.

The third and last credit claimed by Anderson was the sum of $410, which he claimed to have paid to Logan by way of check dated November 7, 1932. This check was drawn upon the South Lombard Trust and Savings Bank, where Logan was cashier, and where

Anderson then carried his account as collector, the Lombard State Bank having failed as above noted. This check was given almost three months after Anderson had ceased to serve as collector of the village of Lombard, and after his successor had been appointed and qualified. He obtained no receipt from Logan for the payment of this money. He did not have the canceled check, nor did he obtain or produce the statement of his account at the South Lombard Trust and Savings Bank. A statement was introduced in evidence by appellee showing the account of the village of Lombard at the South Lombard Trust and Savings Bank, during the period of time the $410 check is claimed to have been issued. No such item appears in the statement of the transactions occurring during such period of time. It was stipulated between the parties that Anderson's services ceased as collector on August 15, 1932. The burden was upon Anderson to establish this credit claimed by virtue of the $410 check. There is no proof that this amount ever reached the village treasurer, and the trial court erred in allowing Anderson credit for the amount of this check.

The judgment of the trial court against appellants is affirmed in all respects except as to the above credit of $410, which was allowed appellants. In this respect the judgment of the trial court is reversed and this cause remanded with directions that the trial court shall add to its judgment as heretofore entered, the sum of $410, together with interest thereon in the manner allowed upon the judgment rendered.

*Judgment affirmed in part, and reversed in part, and remanded with directions.*