Rock Finance Company, Appellant, v. Central National Bank of Sterling, Appellee.

Gen. No. 10,389.

Opinion filed January 10, 1950.
Released for publication February 9, 1950.

C. A. PEDDERSON, of Rockford, and JACOB CANTLIN, of Rock Falls, for appellant.

WARD & WARD, of Sterling, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

In a proceeding instituted by plaintiff, Rock Finance Company, to recover the proceeds of two checks, payable to plaintiff, in the amounts of $12,550 and $4,010, respectively, and drawn on the defendant, Central National Bank of Sterling, the circuit court of Whiteside county entered a summary judgment in favor of defendant, from which plaintiff has prosecuted this appeal.

In determining the propriety of this summary judgment, relieving defendant of liability, the sole query herein is whether defendant evidenced its decision not to pay the checks by the end of the next business day, within the meaning of the terms and provisions of the Illinois Negotiable Instruments Statute. (Ill. Rev. Stat. 1947, ch. 98, par. 207a [Jones Ill. Stats. Ann. 89.207(1)].)

The facts are uncontroverted. On Februry 10, 1940, plaintiff deposited to its account with the Illinois National Bank & Trust Co. of Rockford two checks, payable to plaintiff, in the amounts of $12,550 and $4,010, respectively, drawn by the Auto Mart, Inc., on the defendant bank.

The checks were regularly forwarded through the Federal Reserve Bank of Chicago to the defendant bank on February 13, 1940. The defendant bank held the checks, and apparently did not decide whether it would pay them until some time between 4:30 p. m. and 5:12 p. m. on February 14, 1940, when it telegraphed the Federal Reserve Bank, advising of the nonpayment of the checks. The Federal Reserve Bank thereupon accepted the checks back for credit.

It appears further that, on February 14, 1940, the defendant bank transacted business with the public between the hours of 9:00 a. m. and 3:00 p. m.

Plaintiff instituted this proceeding on December 27, 1949, to secure payment of the checks from defendant on the theory that defendant's failure to decide whether or not to pay the checks before 3:00 p. m. on February 14, 1940, constituted an implied acceptance of the liability thereon.

Defendant maintained that under the statute allowing it until the end of the next business day to decide whether or not to pay the checks, it had until midnight of February 14 to decide, and that by forwarding the telegram to the Federal Reserve Bank at 5:12 p. m. on

February 14, it had complied with the statute, and was thereby relieved from all liability on the checks. Inasmuch as this constituted an absolute defense, defendant contends there was no triable issue of fact, and hence, the summary judgment of the circuit court was proper.

It is evident, however, that if the "business day" ended at 3:00 p. m., as plaintiff insists, defendant would not have complied with the statute, and the issue of defendant's liability would depend upon other affirmative defenses involving certain questions of fact. Under those circumstances, the summary judgment would be in error.

It is incumbent upon this court, therefore, in reviewing the judgment of the circuit court, to ascertain the proper meaning of the phrase "business day," as provided in par. 207a of the Negotiable Instruments Law. (Ch. 98, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 89.207(1)].)

This section provides:

"The drawee bank named in a check presented to it by mail or through a clearing house association, or through a settlement with another bank or banks, or for deposit in an account in the drawee's bank is allowed until the end of the next business day following the day of presentation to decide whether or not it will pay the check."

Plaintiff argues that the term "business" qualifies the word "day," and limits the number of hours therein to those during which the bank is open for the transaction of business with the public.

Defendant insists that the words "business day" are a unit with an established meaning in the parlance of negotiable instruments, whereby the phrase denotes a twenty-four hour day on which business is conducted, as distinguished from a Sunday or holiday.

 The phrase "business day" in par. 207a has not been statutorily or judicially defined, and, there-

fore, according to canons of statutory construction, its proper connotation must be determined first, from an analysis of the entire negotiable instruments statute, to deduce the probable legislative intent (ch. 131, par. 1, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 27.13]; *Landry v. E. G. Shinner & Co., Inc.,* 344 Ill. 579; *People v. Lieber,* 357 Ill. 423) and thereafter by resort to the recognized channels of legal research and analogy.

The expression ''next business day'' does not appear in those precise terms elsewhere in the statute, however, par. 216 [Ill. Rev. Stat. 1947, ch. 98; Jones Ill. Stats. Ann. 89.216] contains the phrase ''next succeeding secular or business day.'' This section provides:

''Where the day, or the last day, for doing an act herein required or permitted to be done falls on Sunday or on a holiday, the act may be done the next succeeding secular or business day.''

This provision is patterned after the Uniform Negotiable Instruments Law (5 Uniform Laws Anno., § 194), which also has been adopted by the State of New York (art. 2, book 37, McKinney's Consol. Laws of N. Y.); and the phrase ''secular or business day,'' appearing therein, is used in contradistinction to Sundays and holidays. (Beutel's, Brannon, Negotiable Instruments Law, p. 1347.) There is no decision in the annotation of this section limiting the secular or business day to those hours during which a bank may be open to the public.

The comparable provision of the Bills of Exchange Act of England (§ 92 B.E.A. 1414) uses the term ''non business days,'' and after enumerating such days, states that any other day is a business day, thereby evidencing a practice of referring to business and non business days to designate days on which business is conducted or prohibited.

██ Whether the Illinois legislature used the phrase ''next business day'' to mean the same as the estab-

lished expression of "next secular or business day," must depend upon the natural import of the words, their use in cases and texts, as well as their practical implication.

Legal dictionaries and encyclopedias do not define "business day" as a distinct legal concept. In Words and Phrases (5 W. & P. 1026) and Ballantine's Law Dictionary (p. 1178), the phrase "business day" is merely followed by a cross reference to "secular or business day," thereby indicating that the terms are treated synonymously. The phrase "secular or business day" is defined therein as a day other than a Sunday or holiday, and in opposition to days of public rest and legal holidays.

In Corpus Juris there is no reference to "business day," but only to "secular or business day," which is similarly defined, and supported by a Louisiana case. (*State v. Duncan,* 118 La. 702, 43 So. 283; 56 C.J. 1275.)

In the legal literature it appears that the phrase "business day" is used by courts and text writers to denote a day upon which business is conducted, as contracted with holidays or Sundays. Thus, in 52 American Jurisprudence 347, the author states, "Where the last day of a period falls on a Sunday or holiday, it is generally sufficient if the act required is performed on the next business day." The phrase is used with a similar connotation by the courts in *Industrial Bank of Chicago v. Bowes,* 165 Ill. 70, 77; *Village of Lombard v. Anderson,* 280 Ill. App. 283; *Hixenbaugh v. Union Cent. Life Ins. Co.,* 219 Ill. App. 534, 538.

Moreover, in *Breslauer v. S. Franklin & Co.,* 205 Ill. App. 372, the court apparently distinguishes between the phrases "business day" and "business hours," with the implication that business day includes the full day and nighttime, whereas business hours includes only that period within which transactions are normally conducted. The court stated at p. 374:

324

"The order provides that the examination be conducted during business hours. This does not mean that such examination be carried on throughout the entire business day, but it was intended that the examination be not conducted in the nighttime, but only during business hours."

The Federal Reserve Bank, furthermore, has given a similar construction to the phrase "business day," for it is provided in the regulations of the board of Governors of the Federal Reserve System, with reference to check clearing and collections, that a check may be returned for credit or refund at any time prior to midnight of the drawee's next business day. (Sec. 5, par. 4, Reg. J.) The term "business day" therein clearly refers to a non-holiday, and consists of a twenty-four hour period up to midnight.

██ Although the Regulations of the Board of Governors of the Federal Reserve System do not modify the law of Illinois, they do reveal the interpretation of the law evolved by the board, and the banking practices predicated thereon, of which this court can take judicial notice.

██ This construction, furthermore, is consistent with the prevailing legal concept of a "day," as an indivisible unit consisting of a twenty-four hour period from midnight to midnight. (*People v. Keating,* 247 Ill. 76; *Kuznitsky v. Murphy,* 381 Ill. 182.) Courts do not ordinarily take cognizance of fractions of a day, and an act to be done therein is not referable to any particular portion thereof. (*Fiedler v. Eckfeldt,* 335 Ill. 11.) Thus, the designation, "election day" referred to the twenty-four hour period of the day on which the election is held, rather than to the hours during which the polls are open. (*Aimo v. People,* 122 Ill. App. 398.)

██ It is, however, within the power of the legislature to declare what shall constitute a day for a particular purpose. The legislature has unequivocally

provided that eight hours of labor, between the rising and setting of the sun, in all mechanical trades, arts and employments, shall constitute a legal day's work, unless there is a specific contract to the contrary. (*People v. Keating, supra,* at p. 78.)

In par. 207a of the Illinois Negotiable Instruments Law, there is no such clear statutory limitation on the length of a day. The word "business," if it were to be construed as qualifying the word day, is vague and ambiguous, for banks vary, even within a single community, in the hours that they are open for business transactions with the public. There is an even greater variance in the number of hours during which the employees and officials attend to business matters after the doors are closed. Therefore, it would be tantamount to judicial legislation to construe the word "business" as limiting the "day" to the hours between 9:00 a. m. and 3:00 p. m., or to the particular number of hours on the specific day that the individual bank may be open to the public.

█ Such a construction, urged by plaintiff, is not only unwarranted from the use of the phrase "business day" in judicial parlance, as hereinbefore noted, but would defeat one of the avowed purposes of the Negotiable Instruments Law, which both parties agree was designed to set forth a uniform procedure for the conduct and handling of negotiable paper. For, unless the phrase "business day" were construed to mean the full twenty-four hour period from midnight to midnight of a day on which business may be conducted, it would be a question of fact in each case as to when the business of the bank ended. Furthermore, the interpretation urged by plaintiff would be inconsistent with established banking practices, of which courts may properly take cognizance. In *Village of Lombard v. Anderson, supra,* at p. 289, the court stated:

"The depositing of checks in banks to the credit of the holder thereof, and the clearing of same through

326

the usual commercial methods, are transactions peculiar to the banking business and should be recognized and dealt with according to the established usage of that business.''

██ It is evident that deposits are frequently made up until the doors of the bank are closed to the public, and until then it is not always ascertainable whether or not a check held for insufficient funds may be covered by a deposit made just before closing hours. If plaintiff's contention that the bank must decide whether it will accept the check during the hours that it is open to the public were sustained, it would mean that banks would have to modify established practices, and return doubtful checks immediately, or make some other onerous arrangement respecting deposits and clearance of checks.

In the absence of a clear statutory mandate, no such requirement should be construed. Paragraph 207a, on the contrary, does not require the performance of an act which can be done only while the bank is open to the public. Unlike the presentment of a check to the bank by the payee, which, of necessity, must be made during banking hours, the act of deciding whether or not to pay the check can be performed by the bank at any hour, and according to practice, is generally done after the bank closes its doors to the public.

██ Inasmuch as defendant, Central National Bank of Sterling, telegraphed the Federal Reserve Bank, of its intention not to accept the checks, prior to midnight on February 14, 1940, the next business day after receipt thereof, it had fully complied with the statute, and there is no basis for imposing liability under an implied acceptance. Therefore, since defendant interposed an absolute defense, involving no triable issue of fact, the circuit court properly entered the summary judgment in its favor. (Ch. 110, par. 181, subpar. (2),

Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 104.057, sub-par. (2)]; *Hall v. Shinadle*, 336 Ill. App. 155) and this judgment must be affirmed.

*Judgment affirmed.*